PB REAL ESTATE, INC. *v.* DEM II
PROPERTIES ET AL.
(AC 17698)

Schaller, Hennessy and Shea, Js.

Argued June 9—officially released October 13, 1998

*Edward J. Botwick,* for the appellant (Botwick & Kurzawa, LLC).

*Maria K. Tougas,* for the appellee (plaintiff).

*Opinion*

SHEA, J. The Connecticut Limited Liability Company Act, General Statutes §§ 34-100 to 34-242, inclusive, was adopted in 1993 and is generally similar to the model act promulgated in 1995 by the Uniform Laws Commissioners. "The allure of the limited liability company is its unique ability to bring together in a single business organization the best features of all other business forms—properly structured, its owners obtain both a corporate-styled liability shield and the pass-through tax benefits of a partnership." Uniform Limited Liability Company Act, prefatory note, 6A U.L.A. 426 (1995). The central issue in this appeal is the extent to which that liability shield protects the interest of a member of a limited liability company against a judgment creditor when the basis for the judgment is an obligation unrelated to the activities of the company. Under the circumstances of this case, we conclude that it raises no barrier to the satisfaction of such a judgment from the member's interest in the company.

After obtaining a deficiency judgment resulting from a mortgage foreclosure against the defendants, Edward J. Botwick, David J. Kurzawa and DEM II Properties,[1] the plaintiff, PB Real Estate, Inc., applied, pursuant to General Statutes (Rev. to 1995) § 34-66 (1),[2] for a charging order directed to Botwick & Kurzawa, LLC, a limited liability company (LLC) engaged in the practice of law. The plaintiff was attempting to satisfy the judgment from any payments becoming due to the individual defendants, each of whom owns one half of the LLC. The trial court granted the application and directed the LLC to pay to the plaintiff "present and future shares of any and all distributions, credits, drawings or payments due[3] to the defendant[s] . . . until the judgment is satisfied in full . . . ." The order also directed the LLC to furnish to the plaintiff for examination a copy of the LLC agreement and various financial information.

---

[1] The named defendant, DEM II Properties, is named as an appellant in the docketing statement filed with this appeal. See Practice Book § 63-4 (a) (4). There is no indication, however, that it is aggrieved by the issuance of the turnover order, which is the subject of this appeal. No brief has been filed on behalf of this defendant. We refer in this opinion to Edward J. Botwick and David J. Kurzawa as the defendants.

[2] General Statutes (Rev. to 1995) § 34-66 (1) provides: "On due application to a competent court by any judgment creditor of a partner, the court which entered the judgment, order, or decree, or any other court, may charge the interest of the debtor partner with payment of the unsatisfied amount of such judgment debt with interest thereon; and may then or later appoint a receiver of his share of the profits, and of any other money due or to fall due to him in respect of the partnership, and make all other orders, directions, accounts and inquiries which the debtor partner might have made, or which the circumstances of the case may require." This provision was repealed by No. 95-341 of the 1995 Public Acts, which became effective on July 1, 1997. The plaintiff's motion for a charging order was granted on November 11, 1996.

[3] The trial court observed that the phrase, "distributions, credits, drawings or payments due" in the charging order may be broader than the definition of a member's limited liability company interest in General Statutes § 34-101 (10), "a member's share of the profits and losses of the limited liability company and a member's right to receive distributions of the limited liability company's assets . . . ." The court restricted the scope of the turnover order to payments found to have been "distributions."

Pursuant to General Statutes § 52-356b (b),[4] the plaintiff applied for a turnover order, claiming that the LLC had not fully complied with the charging order because the 1996 profit and loss statement indicated that a portion of the item designated on the statement as "legal staff" expense appeared to have been paid to the defendants, contrary to the directive in the charging order that all distributions should be paid to the plaintiff. After an evidentiary hearing, the trial court granted the application for a turnover order. The LLC appeals from that order and raises two issues: (1) whether certain payments it made to the defendants, the sole owners, managers and members of the LLC, were properly the subject of a turnover order; and (2) whether the turnover order exceeds the scope of the statute authorizing such orders with respect to an LLC. We resolve both issues against the LLC and affirm the order of the trial court.

I

The trial court found that since the date of the charging order, the LLC had paid approximately $28,000 to each of two defendants. The court rejected the defendants' claim that those payments were merely compensation for their services to the LLC as lawyers and were similar to the wages paid to other employees of the firm. The payments to the defendants were not shown in the "salary" column of the business record where payments to employees of the law firm are recorded, but were listed separately under their initials. The 1996 tax returns of the individual defendants indicated that they received little or no wages, but they reported significant earnings from self-employment. The trial court

---

[4] General Statutes § 52-356b (b) provides: "The court may issue a turnover order pursuant to this section, after notice and hearing or as provided in subsection (c), on a showing of need for the order. If the order is to be directed against a third person, such person shall be notified of his right pursuant to section 52-356c to a determination of any interest claimed in the property."

concluded that the payments made by the law firm to the defendants were "distributions" that were subject to the charging order.

The LLC does not dispute the underlying facts on which the trial court relied in reaching that conclusion. Even without such a concession, we conclude that the court's evidence adequately supports the facts set forth in the court's memorandum of decision. The LLC contends, nevertheless, that several provisions of the Connecticut Limited Liability Company Act preclude the conclusion that the challenged payments were distributions.

## II

The LLC claims that the trial court incorrectly failed to limit the turnover order to the "rights of an assignee of the member's limited liability company interest," as provided by General Statutes § 34-171[5] in defining the rights of a judgment creditor. That statute provides in relevant part that "[t]o the extent so charged, the judgment creditor has only the rights of an assignee of the member's limited liability company interest . . . ." The phrase, "limited liability company membership interest," is defined by General Statutes § 34-101 (10)[6] to mean "a member's share of the profits and losses of

[5] General Statutes § 34-171 provides: "On application to a court of competent jurisdiction by any judgment creditor of a member, the court may charge the member's limited liability company interest with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the member's limited liability company interest. Nothing in sections 34-100 to 34-242, inclusive, shall be held to deprive a member of the benefit of any exemption provided by law applicable to such person's limited liability company membership interest."

[6] General Statutes § 34-101 (10) provides: " 'Limited liability company membership interest' or 'interest' or 'interest in the limited liability company' means a member's share of the profits and losses of the limited liability company and a member's right to receive distributions of the limited liability company's assets, unless otherwise provided in the operating agreement."

the limited liability company and a member's right to receive distributions of the limited liability company's assets, unless otherwise provided in the operating agreement." The operating agreement for the LLC provides that "all distributions . . . shall be made at such time as determined by the Manager,"[7] who consists solely of the two owners. They maintain that they have authorized no distributions and, therefore, the court's finding that the $28,000 each of them has received was a distribution is contrary to General Statutes § 34-158, which provides in part that "[a] member is entitled to receive distributions . . . from a limited liability company to the extent and at the times or upon the happening of the events specified in the operating agreement or at the times determined by the members or managers pursuant to section 34-142."[8]

It defies common sense for the defendants, who jointly comprise the "Manager," to contend that the payments they made to themselves from the assets of their LLC do not constitute distributions simply because they never voted to order such distributions. The operating agreement requires that distributions "shall be made at such time as determined by the Manager,"

[7] Article VIII, § 8.2, of the operating agreement provides: "Except as provided in Section 7.3 (c), all distributions of cash or other property shall be made to the Members pro rata in proportion to the respective Capital Interests of the Members on the record date of such distribution. [E]xcept as provided in Section 8.4, all distributions of Distributable Cash and property shall be made at such time as determined by the Manager. No Member shall have the right to demand and receive property other than cash irrespective of the nature of its Capital Contribution. All amounts withheld pursuant to the Code or any provisions of state or local tax law with respect to any payment or distribution to the Members from the Company shall be treated as amount[s] distributed to the relevant Member or Members pursuant to this Section 8.2."

[8] General Statutes § 34-142 (a) provides in relevant part that "the affirmative vote, approval or consent of . . . more than one-half by number of the managers, if management of the limited liability company is vested in managers, shall be required to decide any matter connected with the business or affairs of the limited liability company."

but does not specify any formal procedure for authorizing distributions. General Statutes § 34-142 (a) requires "the affirmative vote, approval or consent of . . . more than one-half by number of the managers" to decide matters connected with the LLC, but these are alternatives. The defendants can hardly deny that they approved or consented to the payments they received from the LLC, which they own and control. Neither § 34-142 (a) nor § 34-158,[9] which authorizes distributions "at the times determined by the members or managers pursuant to section 34-142,"[10] raises any barrier to the finding of the court that the payments to the defendants constituted distributions subject to the charging order they have disregarded.

Furthermore, the definition in § 34-101 (10) of a member's limited liability company interest, which § 34-171 makes available for satisfaction of a judgment, includes "a member's share of the profits and losses" of the company as well as "distributions of the . . . company's assets . . . ." Although the defendants at trial presented a profit and loss statement for 1996 showing a net profit of only $23.44, that result was achieved only by treating the payments of $28,000 to each of them as expenses for wages. If those payments were neither distributions, as the defendants contend, nor wages, as the trial court found, they would have to be considered

[9] General Statutes § 34-158 provides: "Except as provided in sections 34-159 and 34-210, distributions of cash or other assets of a limited liability company shall be allocated among the members and among classes of members in the manner provided in the operating agreement. If the operating agreement does not so provide, the distributions shall be made on the basis of the value of the contributions made by each member to the extent they have been received by the limited liability company and have not been returned. A member is entitled to receive distributions described in this section from a limited liability company to the extent and at the times or upon the happening of the events specified in the operating agreement or at the times determined by the members or managers pursuant to section 34-142."

[10] See footnote 8.

profits. The plaintiff claims that as an assignee of the defendants' shares thereof, it would be entitled to satisfy its deficiency judgment from those profits even if the payments made to the defendants had not been approved in accordance with the operating agreement. The defendants contend, however, that General Statutes § 34-170 (a) (2), providing that "an assignment entitles the assignee to receive, to the extent assigned, only the distributions to which the assignor would be entitled" indicates otherwise. The trial court did not consider the issue of a possible inconsistency between that provision and the definition of a member's interest in § 34-101 (10), nor shall we do so in view of our agreement with the court's conclusion that the payments received by the defendants were distributions subject to the charging order.

The judgment issuing the turnover order is affirmed.

In this opinion the other judges concurred.