MOUNTVIEW PLAZA ASSOCIATES, INC. *v.* WORLD
WIDE PET SUPPLY, INC., ET AL.
(AC 23344)

Foti, Flynn and West, Js.

Submitted on briefs February 26—officially released May 13, 2003

*Joseph P. Yamin, Eric M. Grant* and *George G. Mowad II* filed a brief for the appellant (plaintiff).

WEST, J. The plaintiff, Mountview Plaza Associates, Inc., appeals from the judgment of the trial court rendered in favor of the defendants Pet Fanatic, LLC (Pet Fanatic), and Jennifer Sachs following the entry of defaults against those defendants. We reverse the judgment of the trial court as to those defendants.

The following facts are relevant to our resolution of the plaintiff's appeal. On September 7, 1995, the plaintiff and the defendant World Wide Pet Supply, Inc. (World Wide Pet), entered into a written agreement under which World Wide Pet agreed to lease certain commercial space from the plaintiff for five years. At the expiration of the lease term, World Wide Pet held over through October, 2001. On October 31, 2001, World Wide Pet abandoned the premises. World Wide Pet did not pay the plaintiff the rent due for its occupancy of the premises during October, 2001, and, in violation of the express terms of the lease, left various shelving units, display materials and general debris in the premises, and damaged a portion of the tile floor. On October 31, 2001, Sachs, the president and sole shareholder of World Wide Pet, formed Pet Fanatic with herself as general manager and sole member. Sachs transferred all of World Wide Pet's assets to Pet Fanatic.

The plaintiff made repeated demands on Sachs, as World Wide Pet's president, to remedy its breaches of the lease agreement. Sachs refused to make payment to the plaintiff, claiming that World Wide Pet was insolvent. Pursuant to the lease agreement, the plaintiff exercised its right to remove the abandoned alterations and improvements, and to seek reimbursement for the cost of the removal and for damage to the premises.

On February 14, 2002, the plaintiff filed a complaint against the defendants. The first count of the complaint alleged a breach of the lease agreement against World

Wide Pet, the second count alleged a violation of the Uniform Fraudulent Transfer Act, General Statutes § 52-552a et seq., against Pet Fanatic, and the third count alleged breach of the lease agreement against Sachs as the alter ego of World Wide Pet. On March 18, 2002, the plaintiff filed separate motions for default for failure to appear against each of the three defendants. The defendants were defaulted, and notice of the defaults was sent on April 10, 2002.[1]

The court held a hearing in damages on May 22, 2002. Following that hearing, the court rendered judgment, finding that the plaintiff had proven damages in the amount of $21,961.59. The court, however, also found that the plaintiff had failed to pierce the corporate veil. Accordingly, the court rendered judgment in favor of the plaintiff solely against World Wide Pet and rendered judgment in favor of the remaining defendants. The plaintiff subsequently filed a motion to reargue. Following a hearing on the motion, the court denied the motion to reargue. This appeal followed.

"A default admits the material facts that constitute a cause of action . . . and entry of default, when appro-

[1] We note that the record is not as clear on the issue of the defendants' default as it might be. The record is devoid of any actual order of the court granting the plaintiff's motions for default. Nevertheless, the court sent notice to each of the defendants that default for failure to appear had been granted. The space on the official notice form for the entry of the name of the defaulted party was not filled in. That omission could conceivably give rise to an ambiguity regarding whether one, two or all three of the defendants were defaulted. That potential ambiguity, however, is resolved by the court's subsequent draft judgment file, in which it clearly states that all of the defendants were defaulted for failure to appear, although the court's language suggests that it was defaulting the defendants as of the date of the judgment file, August 12, 2002. The precise language from the judgment file is: "The Court finds that the Defendants failed to appear, and pursuant to Connecticut Practice Book Section 17-20 et seq., are hereby defaulted." Notwithstanding the uncertainty as to when the defendants were defaulted, it is clear that they were so defaulted for failure to appear. The defendants have not raised any claim to the contrary.

priately made, conclusively determines the liability of a defendant." (Citation omitted; internal quotation marks omitted.) *Skyler Ltd. Partnership* v. *S.P. Douthett & Co.*, 18 Conn. App. 245, 253, 557 A.2d 927, cert. denied, 212 Conn. 802, 560 A.2d 984 (1989). If the allegations of the plaintiff's complaint are sufficient on their face to make out a valid claim for the relief requested, the plaintiff, on the entry of a default against the defendant, need not offer evidence to support those allegations. *Carothers* v. *Butkin Precision Mfg. Co.*, 37 Conn. App. 208, 209, 655 A.2d 799 (1995). Therefore, the only issue before the court following a default is the determination of damages. See id. A plaintiff ordinarily is entitled to at least nominal damages following an entry of default against a defendant in a legal action. *Melfi* v. *Danbury*, 70 Conn. App. 679, 691, 800 A.2d 582, cert. denied, 261 Conn. 922, 806 A.2d 1061 (2002).

"In an action at law, the rule is that the entry of a default operates as a confession by the defaulted defendant of the truth of the material facts alleged in the complaint which are essential to entitle the plaintiff to some of the relief prayed. It is not the equivalent of an admission of all of the facts pleaded. The limit of its effect is to preclude the defaulted defendant from making any further defense and to permit the entry of a judgment against him on the theory that he has admitted such of the facts alleged in the complaint as are essential to such a judgment. It does not follow that the plaintiff is entitled to a judgment for the full amount of the relief claimed. The plaintiff must still prove how much of the judgment prayed for in the complaint he is entitled to receive." (Internal quotation marks omitted.) *Murray* v. *Taylor*, 65 Conn. App. 300, 334–35, 782 A.2d 702, cert. denied, 258 Conn. 928, 783 A.2d 1029 (2001).

We turn first to the court's judgment in favor of Pet Fanatic. We note that the judgment rendered by the court did not specifically address whether the plaintiff

had alleged such facts in its complaint as would support a finding that the transaction complained of actually was fraudulent. Thus, the court provided no reasons to support its rendering of judgment in favor of the defendant. Implicit in the court's judgment, however, is the finding that the plaintiff failed to prove sufficient material facts as would establish Pet Fanatic's violation of the Uniform Fraudulent Transfer Act.

In cases arising under the Uniform Fraudulent Transfer Act; General Statutes § 52-552a et seq.; the determination of the question of fraudulent intent is an issue of fact. *Dietter* v. *Dietter*, 54 Conn. App. 481, 487, 737 A.2d 926, cert. denied, 252 Conn. 906, 743 A.2d 617 (1999). General Statutes § 52-552e (a) provides in relevant part: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor . . . ." Section 52-552e (b) provides in relevant part that "[i]n determining actual intent under subdivision (1) of subsection (a) of this section, consideration may be given, among other factors, to whether . . . (2) the debtor retained possession or control of the property transferred after the transfer . . . (5) the transfer was of substantially all of the debtor's assets . . . (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred, (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred, [and] (10) the transfer occurred shortly before or shortly after a substantial debt was incurred . . . ." General Statutes § 52-552f (a) provides: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer

was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."

The plaintiff's complaint alleged in relevant part that Sachs knew of World Wide Pet's indebtedness to Mountview, and that she took possession of World Wide Pet's assets and property and caused them to be transferred to Pet Fanatic without consideration and with the intent to avoid World Wide Pet's debt to Mountview or to hinder the collection thereof. The plaintiff further alleged that Pet Fanatic "knowingly aided, abetted and conspired with World Wide Pet for the purpose of defrauding World Wide Pet's creditors, specifically Mountview," and that the conveyance deprived World Wide Pet of funds sufficient to satisfy its indebtedness to Mountview.

On the basis of the foregoing, we conclude that the plaintiff alleged sufficient material facts to support the default judgment against Pet Fanatic. Accordingly, we conclude that the court improperly disregarded that default in rendering judgment in favor of Pet Fanatic.

Similarly, because the issue of whether the corporate veil should be pierced is a factual question; *Litchfield Asset Management Corp.* v. *Howell*, 70 Conn. App. 133, 148, 799 A.2d 298, cert. denied, 261 Conn. 911, 806 A.2d 49 (2002); the court, as a consequence of the default, was bound by the material factual allegations set forth in the third count of the plaintiff's complaint. If those allegations provided a sufficient basis to pierce the corporate veil, the court properly should have rendered judgment against Sachs.

"Our Supreme Court has held that we may disregard the fiction of a separate legal entity to pierce the shield

of immunity afforded by the corporate structure in a situation in which the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor. . . . Additionally, the court has affirmed judgments disregarding the corporate entity and imposing individual stockholder liability when a corporation is a mere instrumentality or agent of another corporation or individual owning all or most of its stock." (Citation omitted; internal quotation marks omitted.) *Cahaly* v. *Benistar Property Exchange Trust Co.*, 73 Conn. App. 267, 283–84, 812 A.2d 1, cert. granted on other grounds, 262 Conn. 925, 814 A.2d 378 (2002).

"Courts will disregard the fiction of separate legal entity when a corporation is a mere instrumentality or agent of another corporation or individual owning all or most of its stock. . . . Under such circumstances the general rule, which recognizes the individuality of corporate entities and the independent character of each in respect to their corporate transactions, and the obligations incurred by each in the course of such transactions, will be disregarded, where, as here, the interests of justice and righteous dealing so demand. . . . The circumstance that control is exercised merely through dominating stock ownership, of course, is not enough. . . . There must be such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal." (Internal quotation marks omitted.) *Hersey* v. *Lonrho, Inc.*, 73 Conn. App. 78, 86, 807 A.2d 1009 (2002).

"When determining whether piercing the corporate veil is proper, our Supreme Court has endorsed two tests: the instrumentality test and the identity test. The instrumentality rule requires, in any case but an express agency, proof of three elements: (1) Control, not mere majority or complete stock control, but complete domi-

nation, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." (Internal quotation marks omitted.) Id., 87.

Our review of the pleadings reveals that the material allegations of the complaint satisfy the threshold legal test for piercing the corporate veil. The third count of the complaint alleges that Sachs was, at all relevant times, the sole or majority shareholder of World Wide Pet and that she "used corporate funds as her own, failed to keep accurate corporate financial records, and disregarded the formalities of the corporate form such that the independence of World Wide Pet as a corporate entity ceased to exist." The complaint also alleges that Sachs took control of World Wide Pet's assets and property, and transferred them to Pet Fanatic with the intent to avoid World Wide Pet's debt to the plaintiff in violation of the Uniform Fraudulent Transfer Act, General Statutes § 52-552a et seq. Finally, the complaint alleges that Sachs' actions were the proximate cause of Mountview's damages. Thus, the allegations of the plaintiff's complaint, on which the default was granted, satisfy each of the three elements necessary to support piercing the corporate veil under the instrumentality test. Accordingly, in light of the default entered against Sachs, the court was bound by those allegations as to Sachs' liability and, therefore, its refusal to attach liability to the defendants on the theory of piercing the corporate veil was improper.

The judgment is reversed as to Pet Fanatic, LLC, and Sachs only and the case is remanded with direction to render judgment in favor of the plaintiff as to liability against Pet Fanatic, LLC, and Sachs and thereafter to hold a hearing in damages as to those defendants. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.