RONALD MORRIS ET AL. *v.* CEE DEE, LLC, ET AL.
(AC 25279)

Dranginis, Flynn and Hennessy, Js.

Argued April 21—officially released July 26, 2005

*Matthew G. Berger*, for the appellant (defendant Dee C. Cheshire).

*Toby M. Schaffer*, for the appellees (plaintiffs).

DRANGINIS, J. In this appeal from the judgment of the trial court granting the application for a prejudgment remedy,[1] the defendant Dee C. Cheshire (individual defendant),[2] claims that the court improperly (1) pierced the corporate veil of the defendant Cee Dee, LLC (company), to award a prejudgment attachment against him individually, and (2) refused to consider his arguments regarding comparative negligence and failure to mitigate damages, contrary to General Statutes § 52-278d. We conclude that the court improperly pierced the corporate veil of the company and, therefore, affirm in part and reverse in part the judgment of the trial court.

In December, 2003, the plaintiffs, Ronald Morris and his wife, JoAnn Morris,[3] commenced this action against the defendants for injuries that Ronald Morris allegedly sustained due to the defective condition of a grate on the floor of the bathroom in the mobile home that they had leased. The injury allegedly led to a below the knee

---

[1] The granting of a prejudgment remedy is appealable pursuant to General Statutes § 52-278*l* (a).

[2] Subsequent to the filing of the appeal, the defendant Cee Dee, LLC, has not participated in the appeal by way of filing motions or a brief. We therefore assume that the company has withdrawn its claims on appeal.

Rogers Mobile Home Park and the Palmerone and Moriarty Real Estate Company are also defendants in the trial court; they are not parties to this appeal.

[3] JoAnn Morris, individually, asserts a claim of loss of consortium. During the pendency of this appeal, Ronald Morris died. JoAnn Morris has been substituted, in her administrative capacity as administratrix of the estate of Ronald Morris, as the party plaintiff.

amputation of Ronald Morris' left leg. The complaint sounds in five counts: four counts of negligence alleging defective premises, alternatively, against each of the defendants and one count of loss of consortium. The plaintiffs served the standard personal injury discovery requests on each of the defendants. After receiving the defendants' answers to the interrogatories, the plaintiffs filed an application for a prejudgment remedy in the amount of $5 million.

In his affidavit in support of the prejudgment remedy attachment, Ronald Morris attested, in part: "In August, 2002, my family and I took possession, as renters, of a mobile home unit known as lot 16, 268 Flanders Road, in the Rogers Mobile Home Park, Groton, Connecticut. The owner of the property was [the company], which in turn is solely owned by [the individual defendant]. The property was managed by Palmerone and Moriarty Real Estate company. . . . Shortly after moving in, in August, the landlord had the carpeting in the main bath-room . . . of the mobile home removed . . . . When the carpet was removed, it became obvious that the metal floor vent register . . . was not flush with the floor, but rather was raised approximately one-half to three-quarters of an inch off the floor. It was also sharp and rusty. . . . Twice thereafter, during the month of August, we asked [the individual defendant] to come to the unit so that we could show him the problem. He came to the unit twice, and observed the condition. At each visit, we asked him to please rectify the condition. This was never done. . . . On October 9, 2002, I took a shower in the bathroom. As I stepped out of the shower and took a step towards the sink, I cut my left big toe on the floor vent."[4]

---

[4] Ronald Morris also attested that he was a severe diabetic and suffered from the secondary effects of the disease, including impaired vision and vascular insufficiencies. His toe became infected, which led to the amputation of his toes, gangrene and osteomyelitis of his left leg and, ultimately, the amputation of his lower leg.

In her affidavit in support of the application for a prejudgment remedy, the plaintiffs' counsel attested in part that "[t]he defendants have appeared through their attorney . . . and have answered requests for interrogatories . . . . In these answers, the defendants allege that they have no insurance coverage which can be applied to pay a judgment which might be rendered in this action. . . . The injuries herein are obviously very severe and there is probable cause that a judgment will be rendered of one million dollars or more."

The court held a hearing on the application during two days in March, 2004. Ronald Morris, JoAnn Morris and their grandson, Joshua Geyer, testified on behalf of the plaintiffs. Ronald Morris' medical records and bills also were placed in evidence, as well as photographs of the allegedly defective grate. The defendants' counsel offered the testimony of Nicholas Palmerone of the Palmerone and Moriarity Real Estate Company, the property manager, and placed in evidence documents and copies of documents demonstrating that the mobile home and land were owned by the company, a nonpayment of rent schedule and corporate filings of the company. The individual defendant did not attend the hearing.

The plaintiffs' counsel argued that the court should attach the assets of the company and the individual defendant by piercing the corporate veil, but not attach the assets of the Palmerone and Moriarity Real Estate Company with whom the plaintiffs had no dealings. Counsel argued that "a prejudgment remedy [should] be issued against [the individual defendant] himself personally, because it is my contention that he in fact operated this [limited liability company] as a sham company that really existed for no purpose other than to shield him from liability, which might have been fine if he had insurance . . . but given that he didn't maintain

insurance, as any prudent property owner would do, he should suffer the consequences."[5]

The defendants' counsel argued that his clients had no legal duty to repair the premises, and that Ronald Morris was contributorily negligent and failed to mitigate his damages. Counsel also provided the court with a memorandum of law on piercing the corporate veil, specifically citing *Mountview Plaza Associates, Inc.* v. *World Wide Pet Supply, Inc.*, 76 Conn. App. 627, 820 A.2d 1105 (2003), noting that the company is a limited liability company and that the individual defendant was the sole member. He also argued that there was insufficient evidence as to how, when and if Ronald Morris' injury occurred.

In ruling orally on the application for the prejudgment attachment, the court found that the defective condition of the grate had been brought to the attention of the individual defendant, who neglected to do anything about it. It also found that Ronald Morris cut his toe on the defective grate and that the toe became infected, which led to the amputation of his lower left leg. Although there is a question regarding the date of the accident, that was not of major concern in the probable cause proceeding. The court acknowledged certain issues and the legal arguments made by counsel regarding the duty to repair, but concluded that there was statutory law and sufficient evidence to meet the probable cause standard. The court also found that the medical bills were about $200,000 and that there was an offset of $5500 for unpaid rent.

In rendering its oral decision, the court also stated: "The other arguments with respect to contributory negligence, again, are not really in a motion for a prejudgment remedy. Those are something that could be considered during the trial of the case as well as any

---

[5] The parties stipulated that there was no applicable insurance.

facts as to the damages or failure of the plaintiff Ronald Morris, as the defendants claim, to take sufficient treatment, I don't think, or something that we need consider at this time. Although, again, they may be factors in the value of the case as well as the condition of the plaintiff Ronald Morris and so on at the time the injury occurred. . . . As to the amount, the court is familiar with the injury of this type. The last one I heard about, an amputation of a leg below the knee, one verdict was $3.5 million; the other verdict was about $9 million. So, the court will order a prejudgment attachment of $2 million [on the assets of both the company and individual defendant]."

The individual defendant subsequently filed a motion to reargue the prejudgment attachment, emphasizing law with respect to piercing the corporate veil. The court denied the motion to reargue. The company and the individual defendant appealed. The individual defendant filed a motion for articulation, which the court denied. This court granted the individual defendant's motion for review and ordered the trial court to articulate its decision. The trial court rendered its articulation by memorandum dated September 2, 2004.

The court articulated that it pierced the corporate veil to attach the property of the individual defendant because it found that he operated the company as a sham that existed for no purpose other than to shield him from liability, as argued by the plaintiffs' counsel. The individual defendant failed to attend the prejudgment remedy hearing and was unavailable for questioning by the plaintiffs' counsel. The court found the individual defendant's unexplained absence from the hearing of such an important matter of particular significance.

The court also found that the plaintiffs had established that the individual defendant operated, main-

tained and controlled the premises where Ronald Morris was injured and that the individual defendant had a duty to maintain the premises in a safe condition. Ronald Morris' injury was caused by the carelessness and negligence of the individual defendant, who had personal knowledge of the defective condition that caused the plaintiff's injuries.[6] In attaching the assets of the individual defendant, the court noted that "an officer of a corporation does not incur personal liability for its torts merely because of his official position. Where, however, an agent or officer commits . . . a tort, whether or not he acts on behalf of his . . . corporation, he is liable to third persons injured thereby," quoting *Scribner* v. *O'Brien, Inc.*, 169 Conn. 389, 404, 363 A.2d 160 (1975). The court also stated that the same rule applies to a limited liability company in this state. See *PB Real Estate, Inc.* v. *DEM II Properties*, 50 Conn. App. 741, 742, 719 A.2d 73 (1998). The court granted the application for a prejudgment remedy attaching the assets of the company on the first count and the assets of the individual defendant on the first and second counts.

We first review the law with respect to the granting of a prejudgment remedy. "General Statutes § 52-278d (a) provides in relevant part that a hearing on a prejudgment remedy shall 'be limited to a determination of . . . whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses,

---

[6] In its articulation, the court also stated: "On behalf of Ronald Morris, testimony was presented by the plaintiff Ronald Morris, himself, and by [Geyer] and [JoAnn] Morris. Nicholas Palmerone [of the Palmerone and Moriarty Real Estate Company] was presented as the only witness by the defendant. . . . Both [Ronald] Morris and Geyer testified as to [the individual defendant's] personal knowledge of the defective grate, which caused the plaintiff's injury, and that they showed it to him on more than one occasion and requested that he fix it. He ignored their requests."

counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff . . . . If the court, upon consideration of the facts before it and taking into account any . . . counterclaims . . . finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought and finds that a prejudgment remedy securing the judgment should be granted, the prejudgment remedy applied for shall be granted as requested or as modified by the court.' " *Benton* v. *Simpson*, 78 Conn. App. 746, 750–51, 829 A.2d 68 (2003).

"The legal idea of probable cause is a *bona fide* belief in the existence of the facts essential under the law for the action and such as would warrant a [person] of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. . . .

"This court's role on review of the granting of a prejudgment remedy is very circumscribed. It is not to duplicate the trial court's weighing process, but rather to determine whether its conclusion was reasonable. In the absence of clear error, this court should not overrule the thoughtful decision of the trial court, which has had an opportunity to assess the legal issues which may be raised and to weigh the credibility of at least some of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 752.

"[P]rejudgment remedy proceedings are not involved with the adjudication of the merits of the action brought

by the plaintiff or with the progress or result of that adjudication. They are only concerned with whether and to what extent the plaintiff is entitled to have property of the defendant held in the custody of the law pending adjudication of the merits of that action." (Internal quotation marks omitted.) *Cahaly* v. *Benistar Property Exchange Trust Co.*, 73 Conn. App. 267, 273, 812 A.2d 1 (2002), rev'd on other grounds, 268 Conn. 264, 842 A.2d 1113 (2004). "The purpose of the prejudgment remedy of attachment is security for the satisfaction of the plaintiff's judgment, *should* he obtain one. . . . It is primarily designed to forestall any dissipation of assets by the defendant and to bring [those assets] into the custody of the law to be held as security for the satisfaction of such judgment as the plaintiff *may recover* . . . . The adjudication made by the court on [an] application for a prejudgment remedy is not part of the proceedings ultimately to decide the validity and merits of the plaintiff's cause of action. It is independent of and collateral thereto . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 274–75.

I

The individual defendant's first claim is that the court improperly pierced the corporate veil of the company to attach his personal assets. We agree that the court improperly pierced the corporate veil of the company to attach the individual defendant's personal assets with respect to the first count of the complaint, but conclude that the court properly attached his assets with respect to the allegations of the second count.

A

The individual defendant claims that the court improperly pierced the corporate veil of the company to attach his personal assets. We agree.

When it ruled orally at the conclusion of the hearing on the plaintiffs' application for a prejudgment remedy of attachment, the court stated that it was attaching the assets of the company and the individual defendant in the amount of $2 million. The court concluded its articulation, stating, "The court therefore finds that the allegations of the plaintiff Ronald Morris in the second count against [the individual defendant] were all proven except for the allegation that he owned the property personally. On this basis, the court finds it appropriate to enter judgment against him on the second count. The court also finds that, as claimed by the plaintiff Ronald Morris, and not refuted by the [individual] defendant, since he failed to appear at the hearing, the [company] was a sham corporation that existed only to shield him from liability. Therefore, judgment was found against him personally on the first count as well as the second count."

The issue of whether the corporate veil should be pierced is a question of fact, and this court must defer to the court's findings unless they are clearly erroneous. *Litchfield Asset Management Corp.* v. *Howell*, 70 Conn. App. 133, 148, 799 A.2d 298, cert. denied, 261 Conn. 911, 806 A.2d 49 (2002). *"The facts at issue are those alleged in the pleadings. . . .* The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Vaillancourt* v. *Latifi*, 81 Conn. App. 541, 545, 840 A.2d 1209 (2004); see also *Mountview Plaza Associates, Inc.* v. *World Wide Pet Supply, Inc.*, supra, 76 Conn. App. 632; *Litchfield Asset Management Corp.* v. *Howell*, supra, 148.

"Courts will . . . disregard the fiction of a separate legal entity to pierce the shield of immunity afforded by the corporate structure in a situation in which the corporate entity has been so controlled and dominated

that justice requires liability to be imposed on the real actor. . . . [Our Supreme Court has] affirmed judgments disregarding the corporate entity and imposing individual stockholder liability when a corporation is a mere instrumentality or agent of another corporation or individual owning all or most of its stock." (Citations omitted; internal quotation marks omitted.) *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.*, 187 Conn. 544, 552–53, 447 A.2d 406 (1982).

This state recognizes two theories under which it will permit the protection of the corporate structure to be set aside. Those theories also apply to the protection afforded by a limited liability company. *Litchfield Asset Management Corp.* v. *Howell*, supra, 70 Conn. App. 147. "The instrumentality rules requires, in any case but an express agency, proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice *in respect to the transaction attacked* so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; *and* (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." (Emphasis in original; internal quotation marks omitted.) *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.*, supra, 187 Conn. 553. The second theory is the identity rule. "If plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation

conducted by one corporation for the benefit of the whole enterprise." (Internal quotation marks omitted.) Id., 554.

On the basis of our review of the articulation, the complaint and the legal basis for piercing the corporate veil, we conclude that the court improperly attached the assets of the individual defendant pursuant to count one of the complaint. Count one did not allege facts that the corporate veil should be pierced, neither Ronald Morris' affidavit nor counsel's affidavit alleged facts sufficient to pierce the corporate veil, the court did not make findings of fact in its articulation sufficient to pierce the corporate veil[7] and the attachment of the individual defendant's personal assets is contrary to the law of this state as to when the veil should be pierced to attach the assets of a member of a limited liability company.

The individual defendant also argued that the court improperly found that the company was a sham, as there was no evidence presented to that effect, and that was only the argument of counsel. He further argues that he was not required to attend the hearing and that it was improper for the court to find that he was not present to testify or to be examined as to the validity of the company. Although we agree with the individual defendant that the plaintiffs had the burden of presenting evidence of probable cause; *Rafferty* v. *Noto Bros. Construction, LLC*, 68 Conn. App. 685, 693, 795

---

[7] We have reviewed the entire transcript of the hearing on the application for a prejudgment remedy of attachment. The transcript reveals that the plaintiff Ronald Morris presented evidence regarding his interaction with the individual defendant, but the court did not make any findings of fact concerning that interaction. The plaintiffs failed to file a motion for articulation in that regard. See *Wellington Systems, Inc.* v. *Redding Group, Inc.*, 49 Conn. App. 152, 180, 714 A.2d 21, cert. denied, 247 Conn. 905, 720 A.2d 516 (1998). As it has been said many times, appellate courts do not make findings of fact. See, e.g., *In re Jermaine S.*, 86 Conn. App. 819, 829, 863 A.2d 720, cert. denied, 273 Conn. 938, 875 A.2d 43 (2005).

A.2d 1274 (2002); that he had no obligation to attend the hearing and that the plaintiffs' counsel should have subpoenaed him if she wanted to examine him; see *Teitelman* v. *Bloomstein*, 155 Conn. 653, 662, 236 A.2d 900 (1967); the court did not base its decision to pierce the corporate veil solely on the fact that the individual defendant did not appear to testify. See part I B.

For the foregoing reasons, we reverse the judgment of the court attaching the personal assets of the individual defendant on the basis of the allegations in count one of the complaint.[8]

### B

The individual defendant also claims that the court improperly attached his personal assets because they are protected pursuant to the Connecticut Limited Liability Company Act (act), General Statutes § 34-100 et seq. We do not agree.

Contrary to the individual defendant's assertion, the court did not pierce the veil of protection provided by the act when it attached his personal assets. The court ordered a prejudgment attachment of his assets because it found probable cause that he, himself, had committed the tort of negligence. See *Kilduff* v. *Adams, Inc.*, 219 Conn. 314, 331–32, 593 A.2d 478 (1991); *Scribner* v. *O'Brien*, supra, 169 Conn. 404. The court did not pierce the corporate veil of the company to attach the individual defendant's assets. See *BEC Corp.* v. *Dept. of Environmental Protection*, 256 Conn. 602, 619, 775 A.2d 928 (2001) (basis of individual liability under General Statutes § 22a-432 not derivative liability as where corporate veil is pierced). The court's articulation makes clear that it attached the assets of the individual defendant because it found that the plaintiffs had presented

---

[8] We do not disturb the judgment rendered by the court attaching the assets of the company.

sufficient evidence to demonstrate that they had brought the condition of the grate to the attention of the individual defendant on more than one occasion, asked him to repair it and that he did not. The court found probable cause that the individual defendant was negligent. To prove negligence, a plaintiff must present sufficient evidence of duty, breach of duty, proximate cause and injury. See *Colliers, Dow & Condon, Inc.* v. *Schwartz*, 88 Conn. App. 445, 456, 871 A.2d 373 (2005).

On the basis of our review of the transcript of the hearing and the exhibits, we conclude that the court's findings are not clearly erroneous and that there was probable cause to attach the assets of the individual defendant. The plaintiffs presented evidence that the individual defendant was on notice of the defect, he failed to repair the defect, the defect was the proximate cause of the plaintiff's injuries and the damages are significant.[9] Although the individual defendant was not required to attend the hearing unless subpoenaed, as we stated in part I A, he nonetheless presented no evidence, through his own testimony or otherwise, to counter the testimony of Ronald Morris and his grandson that they showed him the defective grate and asked him to fix it at least twice. The trier of fact may accept as true none, some or all of a witness' testimony; *State* v. *Wortham*, 80 Conn. App. 635, 642, 836 A.2d 1231 (2003), cert. denied, 268 Conn. 901, 845 A.2d 406 (2004); and this court does not second guess a trial court's assessment of credibility. See *State* v. *Miller*, 83 Conn. App. 789, 796–97, 851 A.2d 367, cert. denied, 271 Conn. 911, 859 A.2d 573 (2004).

Furthermore, the law of this state permits the court to attach individual assets if a member of a limited liability company personally commits a tort. See *Litch-*

---

[9] On appeal, the individual defendant does not challenge the court's finding that he had a duty to repair the grate.

*field Asset Management Corp.* v. *Howell,* supra, 70 Conn. App. 147; *PB Real Estate, Inc.* v. *DEM II Properties,* supra, 50 Conn. App. 742. For these reasons, it was not improper for the court to attach the assets of the individual defendant on the basis of the evidence and allegations in count two of the complaint.

## II

The individual defendant also claims that the court failed to consider the arguments of counsel regarding comparative negligence and failure to mitigate damages, contrary to § 52-278d. We are not persuaded.[10]

The plaintiffs applied for a prejudgment remedy of attachment in the amount of $5 million. Section 52-278d (a) provides in relevant part: "If the court, upon consideration of the facts before it and taking into account any defenses, counterclaims or set-offs, claims of exemption and claims of adequate insurance, finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought and finds that a prejudgment remedy securing the judgment should be granted, the prejudgment remedy applied for shall be granted as requested or as modified by the court. . . ."

The individual defendant's motion for articulation did not address the amount of the award of prejudgment attachment. The factual basis of the claim, therefore, is the court's oral ruling, stating in relevant part: "The other arguments with respect to contributory negligence, again, are *not really in a motion for a prejudgment remedy.* Those are something that could be considered during the trial of the case as well as any

---

[10] We note that the company did not participate in the appeal on the basis of this claim, although that fact does not affect our decision. We also note that the same attorney represented all of the parties at the hearing in the trial court and on appeal.

facts as to the damages or failure of the plaintiff [Ronald Morris] as the defendants claim, to take sufficient treatment, I don't think, or something that we need consider at this time. *Although, again, they may be factors in the value of the case* as well as the condition of the plaintiff Ronald Morris and so on at the time the injury occurred. . . . As to the amount, the court is familiar with the injury of this type. The last one I heard about, an amputation of a leg below the knee, one verdict was $3.5 million; the other verdict was about $9 million. So, in this case the court will order a prejudgment attachment of $2 million." (Emphasis added.) Although we find the court's ruling somewhat ambiguous, without the clear lens of an articulation,[11] we cannot conclude that the court did not consider the defendants' arguments and setoff in setting the value of the attachment. We construe the court's remark that contributory negligence is not part of an application for a prejudgment remedy as reference to the probable cause standard that applies to the granting of such an application.

"[I]n an application for a prejudgment remedy, the amount of damages need not be determined with mathematical precision. . . . A fair and reasonable estimate of the likely potential damages is sufficient to support the entry of a prejudgment attachment. . . . Nevertheless, the plaintiff bears the burden of presenting evidence which affords a reasonable basis for measuring her loss." (Citations omitted; internal quotation marks omitted.) *Rafferty* v. *Noto Bros. Construction,* supra, 68 Conn. App. 693. The court found that the plaintiffs presented evidence of damages of approximately $200,000 and that there was a setoff of $5500 for unpaid

---

[11] "One specific purpose of a motion for articulation of the factual basis of a trial court's decision is to clarify an ambiguity or incompleteness in the legal reasoning of the trial court in reaching its decision." (Internal quotation marks omitted.) *Connecticut National Bank* v. *Gager,* 66 Conn. App. 797, 800, 786 A.2d 501 (2001), aff'd, 263 Conn. 321, 820 A.2d 1004 (2003).

rent. In setting the value of the attachment at $2 million, the court noted that special defenses and Ronald Morris' condition affected the value of the case and that it was familiar with cases involving a similar injury that were valued at millions more.

The judgment is reversed only as to the attachment of the personal assets of the individual defendant on count one and the case is remanded with direction to vacate that attachment and for further proceedings in accordance with law. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.