JOHN KRULIKOWSKI ET AL. *v.* THE POLYCAST CORPORATION

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, JS.

Argued April 6—decided May 25, 1966

*P. Hurley Bogardus, Jr.,* with whom, on the brief, was *George F. Lowman,* for the appellant (defendant).

*Emanuel Margolis,* for the appellees (plaintiffs).

HOUSE, J. The several plaintiffs own and occupy residences in an industrial zone in Stamford. The defendant, under a lease, has, since 1955, occupied two industrial-type, one-story buildings in that industrial zone, adjacent to and immediately north of the residences owned and occupied by the plaintiffs. The defendant has been engaged in manufacturing a product called "Polycast," a clear, transparent substance whose characteristics and functions are comparable to the more commonly known product called plexiglass. The product is manufactured by means of polymerization of an acrylic ester called methyl methacrylate, which, in combination with certain catalytic agents, including ethyl acrylate, is cast into sheets of transparent plastic material. Methyl methacrylate is a monomer which emits pungent, penetrating and disagreeable fumes and odors, which have a tendency to cling to various materials with which they come into contact, including such articles as food, clothing and bed linen. The monomer, depending on the intensity and duration of exposure to the fumes which are given off by it, produces a variety of deleterious effects, such as discomfort, nausea and vomiting. At certain concentrations, it causes actual health hazards, such as eye and bronchial irritation and dermatitis.

The plaintiffs have joined in this action, alleging that, by reason of the noise, vibration and fumes arising from the defendant's manufacturing process, they cannot occupy their residences with comfort or sleep at night, that their health has been affected and that the value of their premises has been impaired. It is alleged that the acts of the

defendant constitute a nuisance and cause irreparable injury to the plaintiffs and that they have no adequate remedy at law. By way of relief, the plaintiffs seek an injunction, "an order under the statute for the discontinuance or abatement of such nuisance or for regulating the manner of conducting [the] defendant's business, as the court may deem proper," and, as to each plaintiff, $5000 damages.

At the outset we must consider a jurisdictional question. On this appeal the defendant has, for the first time, raised a question as to the jurisdiction of the Court of Common Pleas to adjudicate the issues raised by the complaint. Despite the tardiness with which the issue is raised, once raised, it must be determined. *Carten* v. *Carten*, 153 Conn. 603, 610, 219 A.2d 711; *Lewis* v. *Rosen*, 149 Conn. 734, 735, 181 A.2d 592; *In re Application of Smith*, 133 Conn. 6, 8, 47 A.2d 521.

It is the claim of the defendant that exclusive jurisdiction of an action such as this one to abate a manufacturer's nuisance is vested in the Superior Court under General Statutes § 52-481. It notes that the plaintiffs' claims for relief are copied verbatim from Form No. 354 of the Practice Book, which is the form suggested for use in an action brought pursuant to General Statutes § 52-481 for relief against a factory nuisance. There is nothing, however, in this essentially permissive statute which indicates that it affords an exclusive remedy or is in derogation of the general powers of a court exercising equitable jurisdiction in the manner provided by General Statutes §§ 52-471 and 52-473. At the time that this action was brought, the Court of Common Pleas had, by statute, been allocated exclusive jurisdiction over "all actions for both

equitable and legal relief, wherein the equitable and legal relief, severally and distinctly demanded, does not exceed five thousand dollars." General Statutes § 52-6 (later amended by Public Acts 1959, No. 28, § 102, and Public Acts 1965, No. 331, § 30).

What is now § 52-481 has remained substantially unchanged since its original enactment. Public Acts 1870, c. 23; Rev. 1875, p. 477 § 5. Significantly, this was before the adoption of the Practice Act of 1879; Public Acts 1879, c. 83; with its liberal provisions for the permissible joinder of parties; Public Acts 1879, c. 83, § 11; *Merwin v. Richardson,* 52 Conn. 223, 235; and provision that legal and equitable rights of parties could be enforced and protected in one action. Public Acts 1879, c. 83, §§ 6, 7; *Welles v. Rhodes,* 59 Conn. 498, 503, 22 A. 286. Also, in 1870 there were Courts of Common Pleas only in the counties of Hartford, New Haven and Fairfield. Public Acts 1869, c. 93; Public Acts 1870, c. 22. Their jurisdiction, both legal and equitable, was limited to $500. Previous to the time when Public Acts 1941, c. 286 (Sup. 1941, c. 283) took effect, making the court a circuit rather than a county court, there were Courts of Common Pleas in but five of the eight counties and in the judicial district of Waterbury, and their exclusive jurisdiction was limited to actions where the matter in demand did not exceed $500. *Walkinshaw v. O'Brien,* 130 Conn. 122, 125, 32 A.2d 547. No question has been raised in these proceedings as to the constitutionality of the successive statutory extensions of the jurisdiction of the Courts of Common Pleas since the decision in the *Walkinshaw* case. See Id., 140, 144.

Section 52-481 of the General Statutes provides that any number of aggrieved persons may unite

in a single complaint to the Superior Court for abatement of a manufacturer's nuisance, that service on the person in charge of the factory shall be sufficient notice to any defendant living outside the state and that such an action shall be privileged in assignment for hearing. Otherwise, the act appears to be nothing more than a codification of general equitable principles which are well rooted in the common law. See *Heppenstall Co.* v. *Berkshire Chemical Co.,* 130 Conn. 485, 488, 35 A.2d 845. Blackstone noted that "if a person keeps his hogs, or other noisome animals, so near the house of another, that the stench of them incommodes him and makes the air unwholesome, this is an injurious nuisance, as it tends to deprive him of the use and benefit of his house. A like injury is, if one's neighbour sets up and exercises an offensive trade; as a tanner's, a tallow-chandler's, or the like; for though these are lawful and necessary trades, yet they should be exercised in remote places . . . this is therefore an actionable nuisance." 2 Blackstone, Commentaries, p. 217. The remedy in those days was by means of an "assise of nuisance" writ "to have the nuisance abated and to recover damages." Id., 221. For over one hundred years in this state, we have recognized the general power of equity to afford relief by injunction and damages for injury caused by a nuisance created by the unreasonable conduct on one's own property of an otherwise lawful activity. *Whitney* v. *Bartholomew,* 21 Conn. 213; *Bishop* v. *Banks,* 33 Conn. 118; *Hurlbut* v. *McKone,* 55 Conn. 31, 10 A. 164; *Heppenstall Co.* v. *Berkshire Chemical Co.,* supra; *Cyr* v. *Brookfield,* 153 Conn. 261, 216 A.2d 198. In the present case, the plaintiffs seek equitable relief and damages which are within the jurisdiction of the Court

of Common Pleas and do not seek any advantage which General Statutes § 52-481 affords beyond such demands. "[A] statute which creates a new remedy for a right already existing under the common law is generally directory only, and does not preclude the use of existing common law remedies." 3 Sutherland, Statutory Construction (3d Ed.) § 5812, p. 95. We conclude that General Statutes § 52-481 does not afford an exclusive remedy in the Superior Court for one damaged by the maintenance of a manufacturer's nuisance and that the present action was within the jurisdiction of the Court of Common Pleas.

On a stipulation for reference, this case was referred for trial before a referee, who, with counsel, visited the defendant's premises and toured the defendant's plant. His 120-paragraph report is based on this inspection and on over 1300 pages of testimony. The trial court accepted the referee's report, overruling the defendant's objections and exceptions to it. The court rendered judgment for the plaintiffs for damages in the respective amounts found by the referee, and it found that the plaintiffs were entitled to an injunction restraining the defendant from conducting its business activities in such a fashion as to permit offensive fumes and odors to invade the plaintiffs' premises. Adapting the injunction to the equities of the situation, the judgment in effect gave the defendant a stay of execution on the injunction, not to exceed four months, to allow it to complete the construction, already commenced, of a fifty-foot stack and related ventilation system.

In our review of the defendant's assignments of error, we have confined ourselves to matters appearing of record and claims which the record

discloses were raised at the trial and were ruled upon and decided by the court adversely to the defendant's claim. Practice Book § 652; *Stanley* v. *M. H. Rhodes, Inc.,* 140 Conn. 689, 695, 103 A.2d 143; Maltbie, Conn. App. Proc. § 305. Facts found by the referee from conflicting evidence and his inspection of the premises "cannot be disturbed if there was evidence before the referee to support them. *Katz* v. *Martin,* 143 Conn. 215, 217, 120 A.2d 826. It is futile to assign error involving the weight of testimony or the credibility of witnesses. *Hartford-Connecticut Trust Co.* v. *Putnam Phalanx,* 138 Conn. 695, 699, 88 A.2d 393. Those were matters for the referee to determine." *West Hill Construction Corporation* v. *Horwath,* 149 Conn. 608, 612, 182 A.2d 919. No correction of the report of the referee which would materially affect his findings or the judgment of the court can be justifiably made. We must disregard the many references in the defendant's brief to matters not appearing of record, and we do not condone the failure to support statements of fact in the case with supporting references to the record. Practice Book § 713 (b); Maltbie, Conn. App. Proc. § 325.

The inescapable conclusion from the record is, as the referee found, that, after due allowance is made for the fact that the defendant's activities are lawfully carried on in an industrial neighborhood, the defendant has been discharging an unnecessary and unreasonable volume of irritating, nauseating and offensive odors and fumes, which it could have prevented by the installation of suitable and available procedures, and that this discharge, as well as noise, until it was abated by muffling devices two years after this suit was brought, has caused the plaintiffs needless and pro-

tracted physical suffering and materially interfered with their comfort and the use and enjoyment of their respective properties. In such circumstances, the plaintiffs are entitled to damages for the injuries sustained and to injunctive relief for the abatement of the nuisance. The governing principles have been well stated in *Nailor* v. *C. W. Blakeslee & Sons, Inc.,* 117 Conn. 241, 245, 167 A. 548: "It is undoubtedly true that what constitutes a nuisance in one locality may not in another, and that one who lives in an industrial district must expect to suffer from the noise and dirt necessarily incident to life in such a neighborhood. He does not, however, assume the burden of inconvenience, discomfort and damage caused by the unreasonable operation of the industrial concerns in his vicinity. It is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary damage or annoyance to his neighbor. If the use is unreasonable the law will hold him responsible." *Marchitto* v. *West Haven,* 150 Conn. 432, 437, 190 A.2d 597; *Nixon* v. *Gniazdowski,* 145 Conn. 46, 52, 138 A.2d 796; *Heppenstall Co.* v. *Berkshire Chemical Co.,* 130 Conn. 485, 488, 35 A.2d 845; *Kaspar* v. *Dawson,* 71 Conn. 405, 410, 42 A. 78.

The issuance of an injunction and the scope and quantum of injunctive relief rests in the sound discretion of the trier. *Heppenstall Co.* v. *Berkshire Chemical Co.,* supra, 489; *Nixon* v. *Gniazdowski,* supra. There is nothing in the record which would justify us in holding that the injunction as issued in this case transcends the proper limits of the trial court's discretion.

Nor do we find any error in the judgment awarding damages to the plaintiffs in the amounts found by the referee. The maximum award to any of the

five plaintiff couples was $2000 and the award to the only single plaintiff was $1000. The record does not substantiate the claim of the defendant that damages were awarded the plaintiffs for the permanent taking of their properties. Although there was evidence before the referee as to the damage to each of the properties if damages were to be computed on the theory of a permanent taking, there was also evidence concerning the reductions in the value of their properties by reason of the temporary interference with the use and enjoyment of their properties prior to the bringing of this action. It is obvious from the awards made that the referee properly computed damages on the latter basis. In such a situation as this, it was proper to consider as elements of damage any temporary reduction of the rental value of the plaintiffs' properties as well as the physical discomfort and annoyance caused by the unreasonable operation of the defendant's plant so far as it materially affected the comfortable enjoyment and occupancy of the houses in which the plaintiffs lived. *Nailor v. C. W. Blakeslee & Sons, Inc.*, supra, 246. As the court stated in that case: "In the nature of things such damages are not susceptible of exact pecuniary computation and must be left largely to the sound judgment of the trier. . . . [W]e find nothing in the record which would justify us in concluding that the amount which the trial court has fixed is not reasonable compensation." Ibid.

There is no error.

In this opinion the other judges concurred.