ROBERT GREGORIO ET AL. *v.* BOROUGH OF
NAUGATUCK ET AL.
(AC 24658)

Foti, Flynn and Dupont, Js.

Argued January 4—officially released May 17, 2005

*John A. Blazi*, for the appellants (defendants).

*Stephen E. Pliakas*, with whom, on the brief, was *Jeffrey J. Tinley*, for the appellees (plaintiffs).

DUPONT, J. The defendants, the borough of Nauga-tuck (borough), the water pollution control board of the borough and several borough employees,[1] appeal from the judgment of the trial court ordering a remittitur of a portion of the jury's damages award in favor of the plaintiffs, Robert Gregorio and Cindy Gregorio.[2] The plaintiffs' complaint sought compensation for damage to their real estate due to the alleged negligence of and the creation and maintenance of a private nuisance by the defendants. The defendants claim that the evidence of the plaintiffs was insufficient to support the diminu-tion in the plaintiffs' property value, as allowed by the court in its calculation of the amount to be remitted to the defendants, and seek a remittitur in addition to that already ordered by the court.[3] We affirm the judgment of the trial court.

---

[1] The other employees are Joan B. Taf, then mayor and chairwoman of the water pollution control board; Ronald F. Mormile, then borough engineer; and Henry J. Witkoski, Jr., superintendent of streets for the borough.

[2] General Statutes § 52-228b provides: "Setting aside of verdict in action claiming money damages. No verdict in any civil action involving a claim for money damages may be set aside except on written motion by a party to the action, stating the reasons relied upon in its support, filed and heard after notice to the adverse party according to the rules of the court. No such verdict may be set aside solely on the ground that the damages are excessive unless the prevailing party has been given an opportunity to have the amount of the judgment decreased by so much thereof as the court deems excessive. No such verdict may be set aside solely on the ground that the damages are inadequate until the parties have first been given an opportunity to accept an addition to the verdict of such amount as the court deems reasonable."

The court, on a motion by the defendants, ordered a remittitur of $22,460.79, which the plaintiffs accepted. The defendants' appeal form states that the appeal is from the plaintiffs' acceptance of the remittitur.

[3] The defendants also claim on appeal that the court improperly denied their motion to set aside the verdict, asserting that (1) the plaintiffs failed to satisfy their burden of proof as to the diminution in property value and (2) the verdict was excessive as a matter of law. The defendants do not argue that the evidence adduced at trial in support of the plaintiffs' claim for damages for personal injury and personal property damage arising from the alleged negligence of the defendants or their maintenance of a private

The plaintiffs' claims arose in connection with the influx of raw sewage into their home due to the failure of a borough pump station. The plaintiffs alleged that the defendants were negligent in the installation, operation and maintenance of the pump station, and that the installation, operation and maintenance of the pump station constituted a private nuisance.[4] The plaintiffs claimed entitlement to a monetary award for damage to their home and personalty, loss of the use and enjoyment of a portion of their home, and emotional distress. Robert Gregorio also claimed damages for exacerbation of a back injury allegedly sustained when he fell while cleaning the sewage deposited in his home. He claimed that he fell while wading through wastewater carrying a five gallon bucket full of wastewater. The defendants asserted the special defenses of governmental immunity[5] and comparative negligence.

The jury returned a verdict of $280,000 as undifferentiated economic damages arising from either negligence

nuisance was insufficient to support the verdict in part. It follows, therefore, that the defendants effectively concede that at least some damages were sufficiently proven. The only question this court must determine, therefore, is whether the order of remittitur, which the plaintiffs accepted, should have been greater.

[4] A public nuisance involves conduct detrimental to public health and safety, whereas a private nuisance involves conduct that interferes with an individual's right to the use and enjoyment of land. *Pestey* v. *Cushman*, 259 Conn. 345, 357, 788 A.2d 496 (2002).

[5] The defendants no longer rely on any theory of sovereign or governmental immunity as defenses. General Statutes § 52-557n provides in relevant part: "Liability of political subdivision and its employees, officers and agents. . . . (a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by . . . (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149. . . ." Municipalities can be liable for the creation or maintenance of private nuisances. *Walsh* v. *Stonington Water Pollution Control Authority*, 250 Conn. 443, 463, 736 A.2d 811 (1999).

or nuisance for the loss of personal property, cost of repair and diminution of the fair market value of Robert Gregorio's house,[6] and \$12,500 as noneconomic damages, including his emotional distress. It subtracted 20 percent of the total of \$292,500 for his negligence, thereby awarding him \$234,000. The jury also awarded Cindy Gregorio \$12,500 for her damages, then deducted 20 percent of that amount for her negligence for a total award of \$10,000.[7] The jury answered interrogatories in the affirmative, finding (1) that the condition complained of had a natural tendency to create danger and inflict injury on person or property, (2) that the danger created was a continuing one, (3) that the use of the defendants' land was unreasonable and (4) that the condition proximately caused an interference with the plaintiffs' right to use and enjoy their property.[8] The jury also found that the nuisance was permanent.

---

[6] The Gregorios jointly owned their home, but the court instructed the jury to award economic damages to Robert Gregorio only because Cindy Gregorio's claims were duplicative of his as to the economic damages relating to their realty and personalty. Accordingly, the use of the words "economic loss" or "economic damage" in this opinion applies to the economic loss of either plaintiff.

[7] Testimony indicated that the plaintiffs had installed a plastic check valve at their home to prevent sewage from flooding the first floor of their raised ranch, but had not installed a more durable brass valve. Presumably the reason for the jury's finding of comparative negligence was that failure or any negligence of Robert Gregorio that caused his fall.

[8] The interrogatories were based on the elements of a cause of action for public nuisance, rather than a private nuisance, but did not mislead the jury in light of the precepts of *Pestey* v. *Cushman*, 259 Conn. 345, 357, 788 A.2d 496 (2002). The defendants do not argue that, as a matter of law, because the elements found by the jury in its interrogatories were those used in public nuisance cases rather than private nuisance cases, which was disparaged in *Pestey*, the verdict cannot stand. *Pestey* distinguished between unreasonable conduct and unreasonable interference by the defendants with the use of the plaintiffs' land, both of which relate to negligent private nuisances. Id., 358. As *Pestey* points out, it is possible for a defendant to use property reasonably, which nevertheless results in an unreasonable interference with a plaintiff's use and enjoyment of land. After adopting the basic principles of 4 Restatement (Second), Torts § 822 (1979), *Pestey* concludes that a plaintiff must show that the defendant's conduct was the proximate cause of an unreasonable interference with the plaintiff's use and enjoyment of

On July 11, 2003, the defendants filed a motion to set aside the verdict or, in the alternative, for remittitur or a new trial. On July 28, 2003, the court heard arguments and denied the motion to set aside the verdict, but ordered a remittitur, concluding that the jury award to Robert Gregorio for economic damages clearly was excessive and contrary to the evidence and to the court's jury instructions on the law. The court reduced Robert Gregorio's economic award to $251,924.01 by allotting $235,000 for diminution in value of the plaintiffs' land, $12,000 for the destruction of personalty, and $4924.01 for medical expenses. After adding $12,500 for noneconomic damages to that award and reducing that $264,424.01 by 20 percent, the court stated that Gregorio was due $211,539.21. Because the jury awarded the plaintiffs $244,000, after reducing the total award by 20 percent for the plaintiffs' comparative negligence, the court ordered a remittitur of $22,460.79.[9] The award to Cindy Gregorio for her noneconomic damages reduced

property. The interference may be intentional or negligent, but it must be unreasonable. *Pestey* v. *Cushman*, supra, 361. In the present case, the jury did not need to find that the defendants' conduct was unreasonable because that element was superfluous and not essential to a verdict in the plaintiffs' favor. Id., 362–63. The charge in this case was almost verbatim to that approved in *Pestey*. Id., 360–63.

[9] The jury awarded one lump sum to Robert Gregorio for economic damages, making it impossible under the general verdict rule to know if any portion related to the defendants' negligence or to their negligent creation or maintenance of a nuisance, as opposed to an absolute nuisance created or maintained by the defendants. See *Sady* v. *Liberty Mutual Ins. Co.*, 29 Conn. App. 552, 558, 616 A.2d 819 (1992). If the entire award had been for absolute nuisance rather than for negligent nuisance, the contributory or comparative negligence of the Gregorios could not be a defense; see *Quinnett* v. *Newman*, 213 Conn. 343, 348–49, 568 A.2d 786 (1990), overruled in part on other grounds, *Craig* v. *Driscoll*, 262 Conn. 312, 329, 813 A.2d 1003 (2003); *Batick* v. *Seymour*, 186 Conn. 632, 639, 443 A.2d 471 (1982); and the $251,924.01 found by the court to be the proper award could not be reduced by 20 percent. The plaintiffs, however, agreed by their acceptance of the court's remittitur figure, that the entire sum of $251,924.01 could be reduced by 20 percent. In essence, the plaintiffs agreed that $211,539.21 is an appropriate amount for compensation due to economic damage.

by 20 percent remained unchanged. The plaintiffs acqui-
esced in the remittitur amount. The defendants
appealed, seeking a judgment in their favor "as to the
diminution of real property claim" or, alternatively, an
order by this court for an additional remittitur, which,
if unacceptable to the parties, would require a remand
to the trial court "for a new trial limited solely to the
issue of damages to real property."[10]

The defendants claim that the evidence was insuffi-
cient to prove damages to the plaintiffs for the diminu-
tion of the value of their property in the amount of
$235,000, as allowed by the court in its calculation of
the remittitur due. The defendants do not argue that
the court should not have allowed the amount of the
loss of personalty or medical expense when considering
their claim for remittitur. The verdict for economic dam-
ages does not contain an itemization of a specific sum
awarded for the diminution in value of the plaintiffs'
property resulting from the negligence of the defen-
dants or from their maintenance of a nuisance. The
plaintiffs' verdict form that required the jury to fill in
the sum for economic damages stated that the sum
"[m]ay include damages for loss of personal property,
cost of repair and diminution in the fair market value
of house . . . ." We cannot, therefore, test whether the
evidence of the dollar value to be ascribed to the one

---

[10] In view of our conclusion that the judgment should be affirmed, we
need not reach the question of whether, in the event we had found the
remittitur to be inadequate, we would set the appropriate amount of a
remittitur or would, in view of the evidence in this case, remand the case
to the trial court for such a finding. See *Davis* v. *P. Gambardella & Son
Cheese Corp.*, 147 Conn. 365, 373, 161 A.2d 583 (1960) (setting appropriate
amount of remittitur to be reflected in judgment unless plaintiff failed to
remit that amount, in which case new trial was ordered), overruled in part
on other grounds, *Petriello* v. *Kalman*, 215 Conn. 377, 398 n.11, 576 A.2d
474 (1990). If a trial court has failed to order an appropriate remittitur from
an excessive verdict, an appellate court can exercise its prerogative to order
a remittitur as an alternative to a new trial. *Civiello* v. *Owens-Corning
Fiberglass Corp.*, 208 Conn. 82, 86, 544 A.2d 158 (1988).

item, diminution of value of property, was sufficient to sustain the verdict because its dollar value as set by the jury cannot be known. The court, however, determined that a $235,000 diminution could have been found by the jury. Because the plaintiffs agreed to accept the remittitur ordered by the court, our emphasis is not on the dollar amount of the verdict as found by the jury, but on the court's finding of the appropriate amount for the loss in value of the plaintiffs' home.

We also need to emphasize that this appeal does not concern any claim of error by either the plaintiffs or the defendants in the instructions that the court gave the jury or any dispute as to the existence of elements of a private nuisance, the elements of a permanent nuisance or that the proximate cause of the plaintiffs' harm was the creation or the maintenance of the defendants' pump station.[11] We also are not concerned with the elements of the noneconomic damages, including the infliction of emotional distress, or the dollar amount attributable thereto as awarded to the plaintiffs. Our decision instead concerns the evidence properly admitted to prove the diminution in value of the plaintiffs' house. We review the evidence of economic damages to determine whether the court should have granted a larger remittitur to the defendants because the diminution in value of the plaintiffs' real estate was less than $235,000.

[11] A private nuisance can be intentional and unreasonable or unintentional based on negligent or reckless conduct. 4 Restatement (Second), Torts § 822 (1979). It also can be the result of an abnormally dangerous activity from which strict liability arises. Id., comment (a). If invasions of the individual's land will continue indefinitely, damages may be awarded for future invasion in the same action as warrants an award of damages for the past invasion. Id. Connecticut follows 4 Restatement (Second), supra, § 822. *Pestey* v. *Cushman*, 259 Conn. 345, 361, 788 A.2d 496 (2002). The allegations of the plaintiffs in this case are based on both intentional and negligent permanent, private nuisances. There are no allegations of an abnormally dangerous activity.

The court properly charged the jury that future damages for permanent nuisance that were reasonably probable to occur could be considered in the economic damages award because the plaintiffs would be foreclosed from returning to court in the future to claim additional damages. The court specifically told the jury that it could award damages for any personal property loss, the cost of any repair due to the defendants' acts, the diminution of the fair market value of the plaintiffs' real estate and all medical bills, both past and future. The defendants did not except to any portion of the court's charge to the jury. The jury, in the answer to interrogatories, found that the defendants' creation and maintenance of the pump station was a permanent nuisance.

The defendants' pump station operation had been problematic ever since the plaintiffs built their home in 1993. Their first floor finished basement area had been adversely affected by a backflow of effluence into the area on four occasions in 1993, 1996, 1998 and 1999. This case concerns the last occasion in 1999, and the plaintiffs do not seek damages in this action arising from the prior three occasions of raw sewage overflow.

Subsequent to the first incident in 1993 when the Gregorios' finished basement was flooded with raw sewage, the borough made various promises to cure the problem. After borough officials stated that they would install a gravity feed sewage line in place of the pump station, and even after a bond referendum to do so was approved by voters, the borough abandoned the plan and continued to operate the pump station.

The major portion of the economic loss of the plaintiffs can be ascribed to the diminution in value of their home. Robert Gregorio testified that the home was a raised ranch that he had built on a little less than three-quarters of an acre. He testified that, in his opinion,

without the problem of sewage seepage every year or two, the house would be worth \$235,000. He also stated that, given the frequency with which the basement floods with raw sewage, the home is worthless and that no one would pay anything for it. He claims that he lives in the house because he has no choice and that he would not have bought the land if he had known of the problems that it would suffer. He testified that his opinion of value was based on the price of the home that sold next door as well as on the sale prices of other nearby homes. He was not allowed to testify about the specific houses that were sold in the neighborhood, when they were sold or their sale prices. Exhibits of the assessor's records of other homes in the area were marked for identification by the plaintiffs, but were not allowed into evidence as full exhibits.

"Diminished value may be established by opinion if, based on all the evidence, the trier finds the opinion credible." *McCahill* v. *Town & Country Associates, Ltd.*, 185 Conn. 37, 41, 440 A.2d 801 (1981). A diminution in value is the difference in value between the property as it would have been without the recurring sewage problem and the value given the problem. See *Tessman* v. *Tiger Lee Construction Co.*, 228 Conn. 42, 47, 634 A.2d 870 (1993). Homeowners are allowed to testify as to that diminution as well as to their opinion that the loss in value is attributable to the maintenance of a private nuisance by a defendant. *Pestey* v. *Cushman*, 259 Conn. 345, 363–64, 788 A.2d 496 (2002). It is also clear that homeowners are allowed to testify as to their opinion of fair market value. *McCahill* v. *Town & Country Associates, Ltd.*, supra, 41; *Moore* v. *Sergi*, 38 Conn. App. 829, 839–40, 664 A.2d 795 (1995). The court did not allow Robert Gregorio to testify that his opinion was based on the fair market value of other homes that had sold in the area of his home, except for the house next door, but he could and did testify as to his opinion

about the diminution in value of his home to zero as a result of the defendants' actions. See *Tessman* v. *Tiger Lee Construction Co.*, supra, 47.

In reviewing a claim that the evidence is insufficient to support a judgment, the evidence must be construed in a light most favorable to sustaining that judgment. *Pestey* v. *Cushman*, supra, 259 Conn. 369. On the basis of the evidence, the court found that the jury could have given full credit to the testimony of Robert Gregorio that his home had diminished in value to zero, a loss of $235,000. It is possible for a trier of fact to conclude that a building has no economic value at all. See *Birnbaum* v. *Ives*, 163 Conn. 12, 15–19, 301 A.2d 262 (1972). In ordering a remittitur, the court gave full credence to Robert Gregorio's opinion that his economic loss, due to diminution in value, was $235,000.

A private nuisance may include intentional (absolute) or negligent conduct that results in an unreasonable interference with a plaintiff's use and enjoyment of property. The interference may include the threat of a future injury. 4 Restatement (Second), Torts § 930 (1979). An injured party may, when the tortious acts are continuing or permanent, as the jury found in this case, elect to recover damages for both past and future incursions of a plaintiff's land, including diminution of value, so that a plaintiff does not have to bring successive actions as the incursions continue over the years. Id.

The evidence was sufficient to prove either a private, absolute and permanent nuisance or negligence. It was also sufficient to support the damages award as modified by the court. We conclude that no additional remittitur is necessary. See *Ham* v. *Greene*, 248 Conn. 508, 537, 729 A.2d 740, cert. denied, 528 U.S. 929, 120 S. Ct. 326, 145 L. Ed. 2d 254 (1999).

The judgment is affirmed.

In this opinion the other judges concurred.