KINSALE, LLC, ET AL. *v.* ROBERT TOMBARI ET AL.
(AC 26467)

Pellegrino, Flynn and Bishop, Js.[*]

Argued November 28, 2005—officially released May 23, 2006

[*] The listing of judges reflects their status on this court as of the date of oral argument.

*Charlotte Croman*, for the appellants (defendants).

*Joshua A. Winnick*, for the appellees (plaintiffs).

*Opinion*

BISHOP, J. In this appeal from the judgment of the trial court granting the plaintiffs' application for a prejudgment remedy,[1] the defendants, Robert Tombari and Nile Barrett, claim that there was insufficient evidence to support a finding of probable cause for an attachment in the amount of $100,000.[2] We affirm the judgment of the trial court.

The court found the following relevant facts. "The plaintiff Kinsale, LLC, a limited liability company comprised of the plaintiffs Thomas Neligon and Diane Neligon, owned real property at 38 Economy Drive in Westbrook. Kinsale, LLC, had constructed a new house on the property and put that house on the market for a price of $799,900, in April, 2004. In April, 2004, and for some time prior thereto, Barrett and Tombari, resided in a house owned by Barrett and located next to the property of Kinsale, LLC, at 30 Economy Drive in Westbrook.

---

[1] The granting of a prejudgment remedy is appealable pursuant to General Statutes § 52-278*l* (a).

[2] The defendants also claim that the court violated their rights to free speech in characterizing their art as junk, that the court improperly denied their motion to modify the amount of the prejudgment remedy and that the court improperly found libel without evidence of damages. We decline to review these claims, however, because the defendants have failed to brief them adequately. See *Greco* v. *United Technologies Corp.*, 277 Conn. 337, 364 n.27, 890 A.2d 1289 (2006).

"In April, 2004, the Neligons resided in a house located at 50 Economy Drive. The Neligons decided to put both the Kinsale, LLC, property and their house on the market in April, 2004. Very shortly after the 'For Sale' sign went up on the two properties, the defendants caused several inoperable Jeep vehicles and a trailer to be placed on their property. The Jeeps looked like they had come from a junkyard. The trailer parked on the street right next to the Kinsale, LLC, property had bumper stickers that stated, 'Bambi makes cute sandwiches,' and, 'I'd Rather Be Loading My Muzzle.'

"The plaintiffs erected a six foot high fence between their property and that of the defendants, and Barrett thereafter constructed a ten foot high structure that consisted of two wooden posts with several rusty cylinders hanging on a wire between the posts. The defendants also put up 'No Trespassing' signs on their property and targets in their windows.

"On September 20, 2004, the Neligons sold 50 Economy Drive for a price of $700,000. Kinsale, LLC, conveyed 38 Economy Drive to the Neligons, and they moved into the house on that property."

The court found that the defendants had imported the junk vehicles and erected the structure with the hanging cylinders maliciously and with the intent to annoy and to injure the plaintiffs in the use and disposition of their property. The court concluded that there was probable cause to believe that the plaintiffs will prevail on their nuisance claim and on their claim for malicious erection of a structure in violation of General Statutes § 52-570. The court found that the defendants' conduct had the effect of depressing the fair market value of each of the plaintiffs' properties by $50,000.

The court further found that Tombari had sent an e-mail, dated April 9, 2004, to Webster Bank, where the plaintiff Thomas Neligon was employed. Finding that

the statements contained in the e-mail were false and malicious, the court concluded that there was probable cause to support Thomas Neligon's claim of libel. The court granted a prejudgment attachment in the amount of $100,000 against the real and personal property of the defendants.[3] This appeal followed.

"This court's role on review of the granting of a prejudgment remedy is very circumscribed. It is not to duplicate the trial court's weighing process, but rather to determine whether its conclusion was reasonable. In the absence of clear error, this court should not overrule the thoughtful decision of the trial court, which has had an opportunity to assess the legal issues which may be raised and to weigh the credibility of at least some of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Morris* v. *Cee Dee, LLC*, 90 Conn. App. 403, 411, 877 A.2d 899, cert. granted on other grounds, 275 Conn. 929, 883 A.2d 1245 (2005) (appeal withdrawn March 13, 2006).

On appeal, the defendants claim that there was insufficient evidence to support the prejudgment remedy in the amount of $100,000. Specifically, the defendants claim that the court (1) employed the wrong legal standard in determining the existence of probable cause and (2) abused its discretion in its determination of the

---

[3] The basis of the $100,000 attachment is not totally clear. The court found probable cause as to three of the plaintiffs' claims: nuisance, malicious erection of a structure and libel. Because the evidence of damages presented at the hearing related to the diminished value of the plaintiffs' properties, we assume that the prejudgment remedy was based on the claims of nuisance or malicious erection of a structure or both. Although the defendants filed a motion for articulation of the court's decision, they did not seek an elucidation of the amount awarded for each of the claims for which the court found probable cause.

existence of probable cause that the defendants' actions diminished the value of the plaintiffs' properties by $100,000.[4] We are not persuaded.

The record belies the first part of the defendants' claim. In its memorandum of decision, the court made specific reference to our Supreme Court's recent decision in *Pestey* v. *Cushman*, 259 Conn. 345, 788 A.2d 496 (2002), in which the court explicitly adopted the principles set forth in 4 Restatement (Second), Torts § 822 (1979), regarding the elements of common-law private nuisance. Specifically included in the court's adherence to *Pestey* and its embrace of § 822 is the requirement that, to be liable, a defendant's conduct must be the proximate cause of an "unreasonable interference with the plaintiff's use and enjoyment of his or her property." Distinguishing the facts at hand from those in *Pestey*, which involved the necessary operation of a dairy farm and the emission of odors incidental to its operation, the court here found that "the defendants' conduct was completely unnecessary [and that] the defendants acted solely to annoy and hamper the plaintiffs." The court found, as well, that Barrett had "maliciously erected the cylinder structure on her property

[4] The dissent contends that the nuisance, if any, was only temporary because it could have been removed and, therefore, the decrease in the rental value and not the diminution in fair market value should have been employed as the proper measure of damages. Because this issue was not raised by either party on appeal, we decline to address it. It appears, however, that the court's measure of damages is in accord with traditional nuisance law that whether a nuisance is temporary or permanent is a question of fact and that, in making that determination, a fact finder may look at the permanent nature of the damages in assessing whether damages are of a permanent or temporary nature. Thus, the fact that the objects placed and erected by the defendants to annoy and to deter the plaintiffs could have been removed is not dispositive of the question of the temporary or permanent nature of the plaintiffs' damages. Rather, if a nuisance, albeit one that could be removed, causes a reduction in the sales price of a property burdened by the nuisance, the damages realized by the seller may be viewed as permanent. See *Herbert* v. *Smyth*, 155 Conn. 78, 230 A.2d 235 (1967).

with intent to annoy and injure the plaintiffs . . . ." The court concluded that the defendants' actions had the effect of depressing the fair market value of each of the plaintiffs' properties in the amount of $50,000. From this record, it is clear that the court was mindful of the reasoning of *Pestey* and employed its teaching in making the probable cause determination.

The defendants next claim that the court abused its discretion in calculating that their actions had the effect of depressing the fair market value of the plaintiffs' properties by $100,000 because (1) Diane Neligon was the only witness to testify for the plaintiffs as to the value of the properties and (2) the testimony of the defendants' expert appraiser was not accorded the appropriate weight.

At trial, Diane Neligon testified as to the value of the properties at issue.[5] She stated that in April, 2004, she and Thomas Neligon listed 50 Economy Drive for sale for $849,000 and 38 Economy Drive for $799,900 with the assistance of two different Realtors. She opined that in posting signs on their property, importing the junk vehicles and erecting a structure higher than their fence, the defendants dissuaded potential buyers from purchasing their properties, resulting in reduced sales prices of $700,000 each, a loss of approximately $250,000.

Francis Buckley, a certified appraiser of residential property, testified on behalf of the defendants. Buckley opined that when the two properties were sold in September, 2004, the fair market value of each property was $700,000.

---

[5] Diane Neligon testified that she had experience as a real estate lender for commercial banks and that, at one point, she had a real estate license as an agent. The defendants objected to her being qualified as an expert because she was not a licensed certified appraiser. The court allowed her to provide an opinion, noting that her lack of credentials would pertain to the weight of her testimony.

"Diminished value may be established by opinion if, based on all the evidence, the trier finds the opinion credible. . . . Homeowners are allowed to testify as to that diminution as well as to their opinion that the loss in value is attributable to the maintenance of a private nuisance by a defendant. . . . It is also clear that homeowners are allowed to testify as to their opinion of fair market value." (Citations omitted; internal quotation marks omitted.) *Gregorio* v. *Naugatuck*, 89 Conn. App. 147, 156, 871 A.2d 1087 (2005).

Here, in finding a total depreciation of the properties of $100,000 instead of the claimed $250,000, the court stated that it considered both the testimony of Diane Neligon and the defendants' appraiser. As noted, when the court's findings are supported by the record, it is not our role to duplicate its weighing process. Accordingly, the court's findings were not clearly erroneous.

The judgment is affirmed.

In this opinion PELLEGRINO, J., concurred.

FLYNN, C. J., dissenting. I respectfully disagree with the majority's decision. This case arises out an unfortunate dispute between neighbors.[1] Our role on appeal is

---

[1] The plaintiffs and the defendants have had several disputes, culminating in the present case. There was testimony at the hearing from various witnesses that the defendants and other neighbors had telephoned the police on various occasions to complain about the plaintiffs Diane Neligon and Thomas Neligon firing a loud cannon from the deck of their home at different times. Diane Neligon testified that she and her husband had repeatedly shot the cannon on "celebratory occasions."

Additionally, while the Neligons' home at 38 Economy Drive in Westbrook was being constructed by the plaintiffs, the defendant Nile Barrett tripped on some construction debris in the roadway and fractured her foot. She brought suit against the plaintiffs for her injury and settled that case, allegedly in reliance on an off the record statement by the trial court that it would order a $25,000 prejudgment attachment in the present case. One of the defendants' claims on appeal in the present case centered around this off the record "ruling" and their reliance on it in settling the prior case. I agree with the majority's holding that this claim was not adequately briefed, however, and, in any event, there is no record concerning this "ruling" for us to review.

to review whether a reasonable person in the plaintiffs' shoes would have a legal right to a $100,000 prejudgment attachment of the defendants' property on the basis of the submitted affidavit, unsigned complaint and the evidence introduced at the hearing on the plaintiffs' application for a prejudgment remedy. Although the existence of a nuisance generally is a question of fact, for which we invoke the clearly erroneous standard of review; see *Murphy* v. *Ossola*, 124 Conn. 366, 372, 199 A. 648 (1938); where the court makes legal conclusions or we are presented with questions of mixed law and fact, we employ the plenary standard of review, as the plaintiffs concede in their brief. See *Robinson* v. *Coughlin*, 266 Conn. 1, 5, 830 A.2d 1114 (2003) (where court's decision based on conclusion of law rather than exercise of judicial discretion, review is plenary); *Fish* v. *Fish*, 90 Conn. App. 744, 754, 881 A.2d 342 (2005) (court's determination of proper legal standard is question of law subject to plenary review), cert. granted on other grounds, 275 Conn. 924, 883 A.2d 1243 (2005). After invoking the required plenary standard of review in this case, I would reverse the judgment of the trial court granting a prejudgment attachment in the amount of $100,000 because I believe that the court used an improper standard in finding probable cause for the plaintiffs' nuisance claim and that it employed an

I also note that the defendants objected to the application for prejudgment remedy on the grounds that the action was a malicious abuse of process meant to pressure the defendants from pursuing their personal injury claim and that the plaintiffs had unclean hands. Nowhere in the court's memorandum of decision was this objection or the evidence offered in support of it discussed. General Statutes § 52-278d (a) requires that a finding of probable cause for a prejudgment remedy hearing be made "upon consideration of the facts before [the court] . . . taking into account any defenses, counterclaims or set-offs, claims of exemption and claims of adequate insurance . . . ." See also *Rafferty* v. *Noto Bros. Construction, LLC*, 68 Conn. App. 685, 690–92, 795 A.2d 1274 (2002). The defendants, however, have not raised this as an issue in their appeal.

improper measure of damages, which in this case would reward the plaintiffs for their self-dealing.[2]

Our prejudgment remedy statutes, General Statutes § 52-278a et seq., require that any person desiring to secure a prejudgment remedy attach to his proposed unsigned writ of summons and complaint an "affidavit sworn to by the plaintiff or any competent affiant setting forth a statement of facts sufficient to show that there is probable cause that a judgment in the amount of the prejudgment remedy sought . . . will be rendered in the matter in favor of the plaintiff . . . ." General Statutes § 52-278c (a) (2). Where a prejudgment attachment is sought, the defendant has a right to a hearing at which the court shall determine whether such probable cause exists. See General Statutes § 52-278d.

Prior to the enactment of our current prejudgment remedy statutes, a plaintiff's attorney simply was allowed to attach a defendant's property in an amount that he or she chose, without the court's objective assessment of probable cause as to the merits of the underlying action or the amount of the attachment. "Connecticut's prejudgment remedy statutes were adopted in response to a line of United States Supreme Court cases prescribing the standards of procedural due process in the area of property rights, foremost

---

[2] Although the majority states that "[t]he basis of the $100,000 attachment is not totally clear"; footnote 4 of the majority opinion; I disagree. In its April 1, 2005 memorandum of decision, the court specifically "conclude[d] that the placement of the junk vehicles and other items . . . had the effect of depressing the fair market value of each parcel of property in the amount of $50,000." It was on the basis of this finding that the court ordered the $100,000 attachment. Additionally, there was no other evidence of damage or loss as to any of the plaintiffs' other claims. Although it is true that one count of the plaintiffs' proposed complaint sounded in libel, which can result in recovery of nominal damages even when no actual damages are proved, $100,000 is not a nominal sum. "Nominal damages means no damages at all. They exist only in name and not in amount. In the quaint language of an old writer, they are 'a mere peg to hang costs on.'" *Stanton* v. *New York & Eastern Railway Co.*, 59 Conn. 272, 282, 22 A. 300 (1890).

among them the opportunity to be heard at a meaningful time and in a meaningful manner.[3] *Roundhouse Construction Corp.* v. *Telesco Masons Supplies Co.*, 168 Conn. 371, 377–78, 362 A.2d 778, vacated, 423 U.S. 809, 96 S. Ct. 20, 46 L. Ed. 2d 29 (1975), aff'd on remand, 170 Conn. 155, 365 A.2d 393, cert. denied, 429 U.S. 889, 97 S. Ct. 246, 50 L. Ed. 2d 172 (1976); 16 H.R. Proc. Pt. 12, 1973 Sess., pp. 5834–42. The statutes were enacted in response to the constitutional requirements set forth in those cases by providing for notice to the debtor and for a hearing prior to any attachment of property. 16 H.R. Proc., supra, pp. 5834–42." *Rafferty* v. *Noto Bros. Construction, LLC*, 68 Conn. App. 685, 691–92, 795 A.2d 1274 (2002). "[T]he 1993 amendments [to the prejudgment remedy statutes] substituted a finding of probable cause that judgment will at least be in the amount sought in the application and that the remedy should be granted for a finding of probable cause merely to sustain the validity of the plaintiff's claim. See General Statutes §§ 52-278c, 52-278d." *Rafferty* v. *Noto Bros. Construction, LLC*, supra, 692 n.4.

In determining whether probable cause exists to support the granting of a prejudgment attachment, the trial court, although vested with broad discretion, must possess "a bona fide belief in the existence of the facts essential under the law for the action and such as would

[3] "See *Fuentes* v. *Shevin*, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972); *Lynch* v. *Household Finance Corp.*, 405 U.S. 538, 92 S. Ct. 1113, 31 L. Ed. 2d 424 (1972); *Sniadach* v. *Family Finance Corp.*, 395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969). Although subsequent cases have held that a hearing prior to the entry of a prejudgment remedy is not an absolute necessity, the opportunity to be heard at a meaningful time and in a meaningful manner remains a fundamental principle of due process that may not be dispensed with. See *Roundhouse Construction Corp.* v. *Telesco Masons Supplies Co.*, 168 Conn. 371, 377–78, 362 A.2d 778, vacated, 423 U.S. 809, 96 S. Ct. 20, 46 L. Ed. 2d 29 (1975), aff'd on remand, 170 Conn. 155, 365 A.2d 393, cert. denied, 429 U.S. 889, 97 S. Ct. 246, 50 L. Ed. 2d 172 (1976)." *Rafferty* v. *Noto Bros. Construction, LLC*, 68 Conn. App. 685, 692 n.3, 795 A.2d 1274 (2002).

warrant a [person] of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . The court's role in [a prejudgment remedy] hearing is to determine probable success by weighing probabilities." (Citations omitted; internal quotation marks omitted.) *Three S. Development Co.* v. *Santore*, 193 Conn. 174, 175–76, 474 A.2d 795 (1984). Furthermore, although the likely amount of damages need not be established with mathematical precision, "the plaintiff bears the burden of presenting evidence [that] affords a reasonable basis for measuring her loss." (Internal quotation marks omitted.) *Rafferty* v. *Noto Bros. Construction, LLC*, supra, 68 Conn. App. 693. In other words, to justify issuance of a prejudgment remedy, probable cause must be established both as to the merits of the cause of action and as to the amount of the requested attachment. That dual requirement ensures that a person is not deprived of the use of property without due process of law.

In *Pestey* v. *Cushman*, 259 Conn. 345, 788 A.2d 496 (2002), our Supreme Court sought to clarify the elements that a plaintiff must prove to prevail on a claim for damages in a common-law private nuisance cause of action. The court explained: "A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land. 4 Restatement (Second), Torts § 821D (1979); see also *Herbert* v. *Smyth*, 155 Conn. 78, 81, 230 A.2d 235 (1967). The law of private nuisance springs from the general principle that [i]t is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary damage or annoyance to his neighbor. *Nailor* v. *C. W. Blakeslee & Sons, Inc.*, 117 Conn. 241, 245, 167 A. 548 (1933). The essence of a private nuisance is an interference with the use and enjoyment of land. W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 87, p. 619." (Internal quotation marks omitted.) *Pestey* v. *Cushman*, supra,

352. "[I]n order to recover damages in a common-law private nuisance cause of action, a plaintiff must show that the defendant's conduct was the proximate cause of an *unreasonable* interference with the plaintiff's use and enjoyment of his or her property. The interference may be either intentional . . . or the result of the defendant's negligence. . . . The determination of whether the interference is unreasonable should be made in light of the fact that some level of interference is inherent in modern society. There are few, if any, places remaining where an individual may rest assured that he will be able to use and enjoy his property free from all interference. Accordingly, *the interference must be substantial to be unreasonable.*"[4] (Citations omitted; emphasis added.) Id., 361–62.

In the present case, therefore, the plaintiffs had the burden of establishing probable cause that they would be successful in proving that the defendants substantially and unreasonably interfered with the plaintiffs' use and enjoyment of their property, causing them damages in the amount of $250,000.[5] However, nowhere on the face of their affidavit, in their complaint or in their testimony did the plaintiffs allege an unreasonable and substantial interference with the use and enjoyment of their property, nor did the court make this necessary finding. Rather, the court specifically found that the defendants' actions were "completely unnecessary [and that] the defendants acted solely to annoy and hamper the plaintiffs." It was on this basis that the court made its

---

[1] *Pestey* involved a case in which the defendants were operating a dairy farm that emitted noxious and offensive odors that *permanently* interfered with the plaintiffs' use and enjoyment of their property. Although *Pestey* is useful in determining the elements necessary to prove a private nuisance cause of action, the private nuisance in *Pestey* was permanent in nature, and, therefore, the court in that case used the diminution in market value of the property as the proper measure of damages. See *Pestey* v. *Cushman,* supra, 259 Conn. 363–64.

[5] The plaintiffs requested an attachment of $250,000.

finding of probable cause as to the plaintiffs' nuisance claim. I cannot agree with the court that unnecessary actions intended to annoy and to hamper someone meet the probable cause standard of a prima facie case for nuisance without an allegation and a finding that there was an unreasonable and substantial interference with the plaintiffs' use and enjoyment of their properties. To meet the probable cause standard necessary for the granting of an attachment of the defendants' property, the trial court had to have a bona fide belief that the plaintiffs likely would succeed in proving that the defendants had substantially and unreasonably interfered with the plaintiffs' use and enjoyment of their property, thereby causing them more than nominal damages. As our Supreme Court explained in *Pestey*, there is a difference, although often confused, in *conduct* that is unreasonable and *interference* that is unreasonable. See *Pestey* v. *Cushman*, supra, 259 Conn. 359–60. It appears evident to me that the court in this case found the defendants' conduct to be unreasonable without finding that the interference, itself, was unreasonable.

At the prejudgment remedy hearing, the plaintiff Diane Neligon testified that in March or April, 2004, targets appeared in a lower window of the defendants' home. In June, 2004, an inoperable Jeep first appeared on the defendants' property, a small utility trailer, with attached bumper stickers, was parked on the street in front of the defendants' property and "no trespassing" signs were posted in the defendants' yard. Another neighbor also parked an inoperable Jeep on his property at that time. The wind chime in the defendants' backyard was enlarged from six feet high to ten feet high on Father's Day weekend in 2004.[6] Additionally, Diane Neligon testified that the defendants' boat had been parked at the end of the cul-de-sac or in another neigh-

---

[6] Apparently, the plaintiffs had erected a six foot high fence, and the defendants raised the height of the wind chime in response to the fence.

bor's yard, but that this neighbor was not involved in or contributing to this dispute, and that the boat had a kite attached to the mast. Diane Neligon also testified that she thought the actions of the defendants had caused the diminution in the value of her home and the home owned by the plaintiff Kinsale, LLC (Kinsale). However, she also specifically testified that Kinsale dropped the price on 38 Economy Drive to $700,000, which Diane Neligon and her husband, the plaintiff Thomas Neligon, the sole members of Kinsale, then purchased for that reduced price, because that is what 50 Economy Drive had been sold for and she had always valued the properties similarly. There was no explanation as to why this self-dealing transaction was necessary, and there was no additional testimony or evidence offered to support the contention that the actions of the defendants had diminished the values of these properties; nor was there evidence as to market value of these properties except that offered by the defendants' appraiser, who testified that the value of each property was $700,000 both before and after the properties were sold.[7] Additionally, although the court found that after having sold their home at 50 Economy Drive and having purchased 38 Economy Drive from Kinsale, the plaintiffs moved into 38 Economy Drive, that finding is not supported by the record. Diane Neligon specifically testified that Kinsale did not have a certificate of occupancy until the fall of 2004 and that the home was not substantially completed until that time. She further testified that after selling 50 Economy Drive in September, she and her husband had to rent that home back from the buyers until November, 2004, because they had no certificate of occupancy for 38 Economy Drive.

[7] Diane Neligon was asked on cross-examination about many appraisals that had been done on these properties while the plaintiffs owned them. Although she acknowledged that the appraisals had been done, she could not remember the value that any of the appraisers had set on the properties nor did she have copies of the reports available at the hearing.

Review of the documentary evidence submitted by the plaintiffs during the prejudgment remedy hearing reveals photographs depicting the following: an old inoperable Willy Jeep parked on the defendants' lawn; another old inoperable Willy Jeep parked on a neighbor's lawn; a small enclosed utility trailer with a Connecticut registration plate attached, with two bumper stickers on the rear bumper, which was parked in front of the defendants' home on the public street; a sailboat on a boat trailer parked on the street at the end of the cul-de-sac, with an inflated device or a kite attached to the mast;[8] the same sailboat and trailer parked on other private property located at the end of the cul-de-sac, along with another boat and trailer and a pick-up truck bearing a Connecticut registration plate, apparently not owned by the defendants; a few preprinted private property signs of the type one would find for sale in a hardware store; target signs located in one small lower window of the defendants' split-level home; and several photographic depictions of a large wooden and metallic mobile or wind chime, located in the rear yard of the defendants' property, which appears different in various photographs.

On the basis of this evidence and the court's memorandum of decision, I agree with the defendants' claim that there was no allegation or evidence that would provide a reasonable person with the bona fide belief that the plaintiffs would succeed on their nuisance claim, which requires that the defendants' actions substantially and unreasonably interfere with the plaintiffs' use and enjoyment of their properties. I also do not believe that the court utilized this standard in finding probable cause for the order of attachment.

[8] Kites or inflatable objects often are attached to the mast of a sailboat to show the direction of the wind and to keep birds from landing on the mast. Inflatable objects also are used to prevent the mast from turning over 180 degrees in the water.

Additionally, even if I were to agree that probable cause to support a nuisance claim was established, I would have to conclude as a matter of law that the court employed an incorrect measure of damages in this case, which also would warrant reversal of the attachment. Although the court in *Pestey* used the diminution in market value of the property as the proper measure of damages in that case, *Pestey* involved a nuisance that was permanent in nature. See *Pestey* v. *Cushman*, supra, 259 Conn. 347–48. "A permanent nuisance is one which inflicts a permanent, irreparable injury onto the property." R. Newman & J. Wildstein, Tort Remedies in Connecticut (1996) § 19-3, p. 283. On the basis of my review of the record in the present case, including the photographic exhibits submitted by the plaintiffs, I am of the firm conclusion that no bona fide belief could be entertained that these wheeled vehicles, signs or the wooden and metallic mobile were permanent in nature. See *Three S. Development Co.* v. *Santore*, supra, 193 Conn. 175 (legal idea of probable cause is bona fide belief in existence of facts essential under law for action such as would warrant a reasonable person to entertain it).

There is a distinction usually observed between permanent and temporary nuisances and the damages that flow therefrom. See *Filisko* v. *Bridgeport Hydraulic Co.*, 176 Conn. 33, 40, 404 A.2d 889 (1978). "A permanent nuisance has been said to be one which inflicts a permanent injury upon real estate; the proper measure of damages is the depreciation in the value of the property. . . . A temporary nuisance is one where there is but temporary interference with the use and enjoyment of property; the appropriate measure of damages is the temporary reduction in rental value [or use value], not depreciation in market value." Id.; see *Krulikowski* v. *Polycast Corp.*, 153 Conn. 661, 670, 220 A.2d 444 (1966); *Nailor* v. *C. W. Blakeslee & Sons, Inc.*, supra, 117 Conn.

246. "[I]n a nuisance case, the jury [also] may properly consider discomfort and annoyance . . . ." (Internal quotation marks omitted.) *Filisko* v. *Bridgeport Hydraulic Co.*, supra, 41; see *Krulikowski* v. *Polycast Corp.*, supra, 670; *Nailor* v. *C. W. Blakeslee & Sons, Inc.*, supra, 246.

"Once a nuisance is established under substantive law, damages are similar to those in many trespass cases. . . . If the nuisance, whatever it is, whether in the form of noxious gases, or noise, or water pollutants, is permanent, the same measure of damages as in cases of permanent damages by trespass is normally used— that is, the depreciation in the market value of the realty by reason of the nuisance. As a rule this will mean a nuisance that is, in the physical nature of things, unlikely to abate or to be avoided by any reasonable expenditure of money . . . . Where the nuisance . . . is not permanent and has been or can be abated, damages are usually measured differently. The plaintiff usually recovers the depreciation in the rental or use value of his property during the period in which the nuisance exists, plus any special damages.[9] Rental value and use value are not necessarily the same thing, and some courts allow a plaintiff who actually occupies the premises to recover the 'use value,' or special value to him, but limit the recovery of the owner who does not occupy the premises to the more objective measure of rental value. Discomfort or inconvenience in the use of the property is, of course, relevant both to establish special damage and as evidence bearing on the loss of rental or use value." (Internal quotation marks omitted.) W. Prosser & W. Keeton, supra, § 89, pp. 637–39.

---

[9] Special damages have been interpreted as discomfort or inconvenience in the use of the property, the cost to repair or to restore the property and for illness caused by the temporary nuisance. See W. Prosser & W. Keeton, supra, § 89, p. 639.

"Also, in addition to the depreciation measure of damages, the plaintiff in a nuisance case may recover the reasonable cost of his own efforts to abate the nuisance or prevent future injury. For example, where a sewer line backed up and overflowed into the plaintiff's theater, the plaintiff hired a contractor to re-lay lateral sewer lines to avoid the problem in the future, and the contractor's charges being reasonable, the plaintiff was allowed to recover them. Such decisions seem correct, though it should also be noted that to the extent the plaintiff is in fact able to abate the nuisance by his own efforts, *or to the extent it is abatable in injunction, permanent damages are not assessed.*" (Emphasis added; internal quotation marks omitted.) Id., § 89, p. 640. Here, the plaintiffs never sought an injunction.[10]

The plaintiffs' affidavit, complaint and their testimony at the hearing alleged that their damages were the diminution in market value of their properties because of the actions of the defendants, which specifi-

---

[10] The present case is distinguishable from *Herbert* v. *Smyth*, supra, 155 Conn. 78, in which damages for the diminution in the market value of the property, not the asking price, of one of the plaintiffs were allowed for a temporary nuisance. In that case, several plaintiffs brought an action for an injunction and for damages against a neighboring property owner who was maintaining a commercial dog kennel, which was producing obnoxious odors, barking and howling at all hours of the day and night. One of the plaintiffs sold his property during the pendency of the litigation. The court awarded that plaintiff damages for the diminution in the market value, which was due to the commercial dog kennel. The remaining plaintiffs were awarded damages for discomfort and annoyance only, and our Supreme Court explained that "[n]o damages for depreciation were granted to the [other plaintiffs] because any devaluation of their property was presumably restored by virtue of the prohibitory injunction . . . ." Id., 84 n.1. Here, there was no injunction or abatement sought, and the plaintiffs alleged in the affidavit and complaint that the alleged nuisance occurred from April to September, 2004. I note that they did not sell these properties until September 20, 2004. Additionally, the plaintiffs made no effort to seek an injunction or to otherwise abate the alleged nuisance from its alleged inception through the time they were able to sell their properties, nor have they sought an injunction in this action.

cally were alleged to have occurred from April to September, 2004. Both the plaintiffs' affidavit and their complaint state that their properties were sold on September 20, 2004, apparently after the alleged nuisance had been abated. Absent from their affidavit, complaint or their testimony is any evidence concerning the monetary value of a temporary interference with the plaintiffs' use and enjoyment of their property.[11] Nevertheless, the court, finding that the actions of the defendants amounted to a nuisance, granted a prejudgment remedy in the amount of $100,000 for the alleged diminution in the market value of the plaintiffs' properties. I conclude that this was an incorrect measure of damages for what could be termed, at best, a temporary private nuisance, which certainly was abatable. Boat and utility trailers, other wheeled vehicles, signs or targets placed in a window and private property signs placed on private property were all things that easily could have been removed from the defendants' land, adjoining street or other neighbors' properties and, therefore, could not properly be considered permanent in nature. Furthermore, whether the plaintiffs regarded the wind chime as unsightly or as a work of art, the device rested on two 4" x 6" pieces of timber, which easily could have been removed with a chain saw within a time span of five minutes. In this sense, all of these things very easily can be distinguished from businesses that cause pollution, onerous odors, noxious gases and the like, which normally form the basis for permanent nuisance claims.

Here, the plaintiffs are seeking monetary damages for the alleged diminution in the value of their properties that allegedly resulted from several easily abatable things in the defendants' yard, on the public street or in the yards of other neighbors, who are not alleged to

---

[11] Diane Neligon did testify that she thought the defendants' actions amounted to "sort of, emotional depreciation."

be involved in this dispute. Despite the fact that these things were easily abatable, no attempt at abatement was made and no request for an injunction was sought. Rather, the plaintiffs continued in their attempt to sell their properties, allegedly for less than market value, and then sought to collect the difference from the defendants, never giving them the opportunity to correct or to abate any alleged nuisance. I simply cannot agree that the plaintiffs are entitled to damages for a permanent nuisance solely because they sold their properties, where no attempt at abatement was made.

This is especially true in the present case where Kinsale sold 38 Economy Drive to its only two members, the Neligons, allegedly for less than market value. The Neligons, now owning that home, have secured an attachment for $50,000, in Kinsale's name, for the temporary diminution in the value of that property, from which they, themselves, benefited. The problem with allowing such a measure of damages is fully demonstrated by this case. If Kinsale were awarded permanent damages for the alleged diminution in the value of the property, although that diminution was only temporary and no attempt at abatement was made, the Neligons, who were the only members of that company and purchased that home from their company, allegedly for less than market value, now own that home, which they, themselves, allege is worth nearly $800,000, having purchased it for only $700,000 from their company. That is an unjust windfall.

To conclude, I believe that the court used an improper standard in finding probable cause for the plaintiffs' nuisance claim and that it employed an improper measure of damages, which, in this case, would reward the plaintiffs for their self-dealing. For these reasons, I would reverse the judgment of the trial court granting the prejudgment attachment in the amount of $100,000.